ROBERTS, J.,
for the Court.
¶ 1. This appeal stems from the dissolution of the Blackwell and White law firm, a partnership formed on November 1, 1983, and governed by formal partnership agreements between the parties originally executed on January 9, 1984. Gary White filed a complaint in the Harrison County Chancery Court on September 18, 2006, requesting the chancery court to aide in dissolving the Blackwell and White partnership (Partnership) and in the “winding up of the partnership in accordance with the law and the facts, with a finding that it was the conduct of [Leonard] Blackwell that proximately caused the partnership to dissolve.” The complaint was amended by leave of the chancei-y court on July 23, *735 2008. The chancery court then bifurcated the case on July 28, 2008, and entered an interlocutory order on November 18, 2008, finding that Blackwell’s withdrawal letter dated May 1, 2006, was the effective date of dissolution; therefore, Section 15(1) of the partnership agreement controlled the dissolution of the partnership. A trial was held on the remaining issues, and a judgment was entered in favor of Blackwell. White filed a motion for reconsideration and a motion for a new trial; the chancery court denied the motions on August 12, 2009.
FACTS AND PROCEDURAL HISTORY
¶ 2. Blackwell and White formed a law firm on the Mississippi Gulf Coast with their partnership governed by a formal partnership agreement (Agreement) signed by both parties on January 9, 1984. The original Agreement was amended in 1990, 1992, 1993, and 1997. After twenty-two years of practicing law together, Blackwell submitted a letter on May 1, 2006, to White and Latricia Tisdale informing them of his withdrawal from the Partnership on May 1, 2006.[1] Blackwell’s letter also referred the parties to the pertinent sections of the Agreement on how to handle the Partnership’s voluntary dissolution. White disagreed with the terms of the dissolution process that Blackwell suggested, so on September 18, 2006, White filed his initial complaint in the chancery court. This complaint was later amended on July 23, 2008.
¶ 3. In his complaint, White alleged that Blackwell had engaged in behavior that violated the terms of the Agreement; therefore, the proper process for the dissolution of the Partnership was not found in Section 15 of the Agreement that dealt with withdrawal of a partner, but rather Section 18 which provides for the liquidation of the Partnership’s assets entitling White to fifty percent of fees related to the Partnership’s clients. White further alleged that Blackwell breached his fiduciary duty to the firm.
¶ 4. The chancellor entered an order on July 28, 2008, bifurcating the matter, and a hearing was held on August 28, 2008, to determine whether Blackwell’s withdrawal letter on May 1, 2006, was effective and which section of the Agreement would control the distribution of the Partnership’s assets and liabilities. In the interlocutory order entered on November 18, 2008, the chancellor found the effective date of dissolution was May 1, 2006 — the date of Blackwell’s withdrawal letter. The chancellor further found that Section 15 of the Agreement governed the distribution of the Partnership’s post-dissolution fees.
¶ 5. The remaining issues were heard by the chancellor on November 17-19, 2008, and on January 8, 9, and 12, 2009. After hearing evidence during the five-day trial, the chancellor entered his twenty-eight page judgment on June 5, 2009. The chancellor found the November 18, 2008 interlocutory order stands on those issues, and he then found White was neither entitled to an accounting of Blackwell’s P.A. or Blackwell as an individual nor did Blackwell breach any duty to the Partnership or breach the Agreement. White subsequently, filed a motion to reconsider or, in the alternative, a- motion for a new trial. The chancellor denied both motions.
¶ 6. From this denial, White now appeals and raises the following issues:
*736 I. Whether the chancery court erred in failing to revisit its interlocutory opinion where it addressed, in part, the declaratory judgment as to which provisions of the partnership agreement applied to the dissolution.
II. Whether the chancery court failed to find that Blackwell breached the partnership agreement by splitting fees with a non-lawyer, failing to devote full-time and best efforts to the law practice, appropriating firm opportunities to his personal account, and failing to account for client fees paid directly to him.
III. Whether Blackwell’s breaches of fiduciary duties and ethical duties “were of such magnitude as to vitiate the partnership agreement and corrupt it beyond repair, entitling [White] to end the partnership for cause”; thus Section 18 of the partnership agreement and not Section 15(1) controls the ending of the partnership.
IV. Whether the chancery court committed manifest error in finding that White was not entitled to any money beyond what had already been paid to him for fees that Blackwell had collected.
V. Whether the chancery court erred in partially enforcing the partnership agreement’s plan of dissolution.
STANDARD OF REVIEW
¶ 7. On appeal, a chancellor’s findings of fact receive great deference. Rhodes v. Rhodes, 52 So.3d 430, 444 (¶ 55) (Miss.Ct.App.2011). With our limited standard of review in mind, we will not disturb the chancellor’s findings of fact “unless they are found to be manifestly wrong or clearly erroneous, or where the chancellor applied an incorrect legal standard.” In re Guardianship Estate of Baker, 31 So.3d 1285, 1287 (¶4) (Miss.Ct.App.2010). “[O]ur job is to determine whether there was substantial, credible evidence supporting the chancellor’s findings such that the decision was not manifestly wrong or clearly erroneous.” In re Allen, 962 So.2d 737, 741 (¶ 14) (Miss.Ct.App.2007) (citing In re Estate of Carter v. Shackelford, 912 So.2d 138,143 (¶ 18) (Miss.2005)). However, questions of law are subject to a de novo review on appeal. Cooper v. Crabb, 587 So.2d 236, 239 (Miss.1991) (citations omitted).
ANALYSIS
I. Interlocutory Opinion
¶ 8. White’s first issue is that the chancellor erred in failing to readdress the interlocutory opinion, titled “Findings of Fact and Conclusions of Law,” entered on November 18, 2008, when he entered the final judgment on June 5, 2009.
¶ 9. In count one of White’s July 25, 2008 amended complaint, White requested declaratory relief from the chancery court. Specifically, he asked the chancery court to declare the rights of the capital partners under the amended Agreement with respect to the dissolution of the Partnership, distribution of the Partnership’s assets and liabilities, and the distribution of fees collected after the date of dissolution. In an order entered on July 28, 2008, the chancery court bifurcated the matter under Mississippi Rule of Civil Procedure Rule 42(b) and scheduled a hearing for the issues in count one of the amended complaint to be heard on August 28, 2008. The chancellor entered his “Findings of Fact and Conclusions of Law” on those issues on November 18, 2008. He determined the effect of Blackwell’s May 1, 2006 withdrawal letter, the effective date of dissolution of the Partnership, and the basis for distributing the fees in the Partner *737 ship’s cases that were pending or closed after the date of dissolution or paid after the date of dissolution.
¶ 10. In regard to Blackwell’s letter, the chancellor found that letter was an effective letter of withdrawal; therefore, the date of dissolution of the Partnership was May 1, 2006. The chancellor interpreted multiple sections of the Agreement to aide in making this determination. He reviewed the Agreement and its amendments to determine how the Agreement and the withdrawal letter affected one another. Citing Pursue Energy Corp. v. Perkins, 558 So.2d 349, 351-353 (Miss.1990), the chancellor applied a three-step process on interpreting the Agreement as a contract. The first step is to ascertain the parties’ intent by examining only the language contained within the “four corners” of the document. Id. at 352. If the language within the four corners is ambiguous, step two “entails discretionary implementation of applicable ‘canons’ of contract construction. For example, one rule espoused by [the Mississippi Supreme Court] suggests that uncertainties should be resolved against the party who prepared the instrument.” Id. at 352-53 (citing Clark v. Carter, 351 So.2d 1333, 1334, 1336 (Miss.1977)). If both steps one and two do not provide adequate clarity of the parties’ intent, the third step allows the use of extrinsic or parol evidence to interpret the contract. Id. at 353.
¶ 11. In the current case, the chancellor found that “[i]n order to understand the effect of the May 1[, 2006,] letter from Mr. Blackwell, the letter must be understood in light of the Original Partnership Agreement and the Amended Partnership Agreement of January 1,1997.” He noted that both parties agreed that the dissolution procedures in Section 15 of the Agreement applied to voluntary dissolution; however, the dispute rested in the parties’ differing interpretations of Section 6 of the Agreement as amended on January 1, 1997. Section 6 of the amended Agreement provides that a capital partner or income partner may withdraw from the Partnership “upon not less than three months[’] notice in writing, addressed to the Capital Partners.” Based on this language, White argues that the actual date of dissolution was three months after the withdrawal letter since three months’ notice was required; therefore, he is entitled to additional compensation for fees Blackwell had collected after the date of dissolution. The chancellor further elaborated that Section 6 also contains the following language: “Unless otherwise determined by the unanimous vote of the remaining partners, the withdrawal of a partner shall not cause the dissolution of the [P]artnership. As to Leonard A. Blackwell, and Geary [sic] E. White, withdrawal would be governed by their partnership agreement on Jamiary 9, 198h, and any an all amendments thereto except this amendment.” (Emphasis added). Applying the principles of contract law as discussed above, the chancellor found that based on the language emphasized above, Blackwell and White “chose to exempt themselves from the general provisions of the first sentence of the paragraph”; therefore, they were not required to give three months’ notice to the other partners. Since the three-month-notice requirement did not apply, the chancellor found that the effective date of dissolution was the day Blackwell delivered the withdrawal letter, May 1, 2006. Based on his finding that Blackwell’s letter served as a proper withdrawal, the chancellor further found that Section 15 of the Agreement, which provides for the voluntary dissolution of the Partnership, governed the distribution of the Partnership’s assets and liabilities.
¶ 12. Returning to White’s argument on appeal, he argues the chancellor erred as a *738 matter of law by not readdressing the findings in the interlocutory opinion entered on November 18, 2008. In his final judgment, the chancellor stated that White had not filed a motion for reconsideration of the interlocutory opinion; therefore, the findings from his interlocutory opinion stood.
¶ 13. Pursuant to Mississippi Rule of Appellate Rule 28(a)(6), White’s argument must provide his contentions and “reasons for those contentions, with citations to the authorities, statutes, and parts of the record relied on.” (Emphasis added). Although White alleges the chancellor erred as a matter of law in failing to readdress the issues in his interlocutory opinion, White has cited no relevant authority that required the chancellor to do so. It is well established that it is the appellant’s duty to cite relevant authority, or the lack of relevant authority cited “is a procedural bar, and this Court is under no obligation to consider the assignment [of error].” United Plumbing & Heating Co. v. Mosley, 835 So.2d 88, 92 (¶ 8) (Miss.Ct.App.2002) (citations omitted).
II. Breaches of Partnership Agreement, Fiduciary Duties and Ethical Duties[2]
¶ 14. White next contends that the chancellor erred in failing to find Blackwell breached the Agreement by splitting fees with a non-lawyer, failing to devote his full time and best effort to the Partnership, appropriating Partnership opportunities, and failing to account for client fees paid. White also asserts that Blackwell breached his fiduciary duties to the Partnership. In his brief, White spends much of his time devoted to re-explaining each factual scenario as it relates to his argument that Blackwell breached his duty to the Partnership. White is ultimately attempting to show that because Blackwell breached his duties, White is entitled to receive a greater portion of the Partnership’s assets because Section 18 of the Agreement providing for liquidation of. the Partnership is applicable and not Section 15 as the chancellor incorrectly found.
A. Contractual Duties
¶ 15. We first address White’s argument that the chancellor erred in finding that Blackwell did not breach the Agreement. At trial and in his brief, White provides numerous examples of behavior he alleges Blackwell committed sufficient to be deemed a breach of the Agreement. We will only address those allegations that are necessary for the disposition of this case.
¶ 16. White submits that Blackwell split attorneys’ fees with John Felsher which was a breach of the Agreement and a breach of Blackwell’s fiduciary duties. It is undisputed that Blackwell and Felsher formed a partnership in 2005 for the purpose of facilitating real-estate-investment opportunities; however, White alleges he was not aware of Blackwell and Felsher’s partnership. White insists that he “knew Felsher only as a Blackwell and White client, a man who did business through a closely held corporation named NEMSI, for whom the firm performed various legal tasks on a ongoing basis and whom Mr. Blackwell had associated in some capacity to assist with the Beverin case.” A history of the Beverin case is required to understand White’s assertion. Blackwell, on behalf of the firm, entered into a contingency fee agreement with the Beverins regarding the sale of property owned by them.
*739 Blackwell hired Felsher to act as a market consultant on the case. The consulting agreement provided Felsher’s fee was on a contingency basis. Blackwell and Felsher had tentatively agreed the consulting fee would be around $100,000; however, when the agreement was reduced to writing after the sale, Felsher received $125,000. According to White, Felsher was paid by the firm out of attorneys’ fees received from the Beverin case. Blackwell contends that he did not split fees and that Felsher was not paid until the attorneys’ fees were collected and deposited into the firm’s account. The chancellor found that the fee Felsher received “was a flat rate and not a pre-determined percentage of attorneys’ fees[,]” and the payment was unrelated to the amount of attorneys’ fees the firm collected. Our review of the record does not provide any contradictory evidence to find that the chancellor was manifestly wrong or clearly erroneous in his decision; therefore, we find Blackwell did not breach the Agreement or the duty of care owed to the Partnership.
¶ 17. Next, White argues that Blackwell breached Section 6 of the Agreement by failing to devote his full time and best efforts to the firm. White’s argument is that Blackwell did not devote his full time to the partnership because he “entered into an undisclosed real estate investment partnership with Mr. Felsher, a client with the firm[,]” and Blackwell’s role in the partnership with Felsher was more than one of a “passive investor[.]” White presents additional evidence to support his contention by submitting that Blackwell spent time inspecting real estate, sending letters, and holding meetings for the Blackwell and Felsher partnership. The chancellor disagreed and found that although Blackwell was involved in other activities, “this does not carry with it the assumption that Blackwell was not also working full time for the benefit of the [Partnership],” and the chancellor found there was nothing in the record to indicate that Blackwell did not devote his full time to the Partnership.
¶ 18. White also argues that Blackwell and Felsher’s partnership conflicted with their Partnership and that there were several situations in which the two partnerships were in competition with one another. The Agreement clearly provides: “The purpose of the partnership shall be to practice the profession of attorneys at law, and to do all other acts incidental thereto pursuant to the law of the State of Mississippi.” To prevail on a claim of usurped business opportunities, White must show that the business opportunity was logically related to the existing business or a prospective activity and that the Partnership could have taken advantage of the opportunity because it was solvent at the time. Hill v. Se. Floor Covering, Co., Inc., 596 So.2d 874, 877 (Miss.1992) (quoting 19 C.J.S. Corporations § 513 (1990)). Based on this language, the chancellor found that Blackwell could engage in other activities or opportunities as long as it did not involve the practice of law or provide legal services. After hearing the testimony presented at trial regarding the numerous factual scenarios White alleged were in conflict with the Partnership or competing with the it, the chancellor found White failed to prove the opportunities were logically related to the existing business of practicing law. The Blackwell and Felsher partnership mainly involved real-estate investments, and, in fact, the Partnership benefitted from the Blackwell and Felsher partnership because the Partnership was retained for any legal services needed. The chancellor held: “No business opportunity of the [Partnership] was usurped by Blackwell through his personal real estate investments.”
*740 ¶ 19. Our review of the record does not present any evidence the chancellor was manifestly wrong or clearly erroneous when holding that Blackwell did not breach any contractual duties. This issue is without merit.
B. Fiduciary Duties
¶ 20. White next argues that Blackwell breached his fiduciary duties to the Partnership. The Uniform Partnership Act (UPA), codified at Mississippi Code Annotated section 79-13 — 404 (Rev. 2009), limits the fiduciary duties that a partner owes to a partnership to two categories: duty of care and duty of loyalty. Pursuant to Mississippi Code Annotated section 79-13-404(b)(l)-(3), a partner’s duty of loyalty is limited to the following situations:
(1) To account to the partnership and hold as trustee for it any property, profit, or benefit derived by the partner in the conduct and winding up of the partnership business or derived from a use by the partner of partnership property, including the appropriation of a partnership opportunity;
(2) To refrain from dealing with the partnership in the conduct or winding up of the partnership business as or on behalf of a party having an interest adverse to the partnership; and
(3) To refrain from competing with the partnership in the conduct of the partnership business before the dissolution of the partnership.
¶ 21. A partner’s duty of care, found at Mississippi Code Annotated section 79-13-404(c), “is limited to refraining from engaging in grossly negligent or reckless conduct, intentional misconduct, or a knowing violation of law.”
¶ 22. Citing this statute, White argues that Blackwell’s failure to disclose the full extent of his partnership with Felsher was a breach of Blackwell’s fiduciary duties to the partnership. He further argues that Blackwell and Felsher’s partnership competed with the Blackwell and White law firm on several opportunities.
¶ 23. First, we recognize the UPA also contains a provision expressly allowing a partner to act in his own best interest while not violating a duty or obligation contained in the UPA. In his June 5, 2008 judgment, the chancellor stated, “there is nothing in the above[-stated] statute [Mississippi Code Annotated section 79-13-404] that requires disclosure of such relationships unless it involves a person or entity having an interest adverse to the partnership, which would be prohibited.” The chancellor continued by noting: “If a partner has reason to believe that a relationship may include a party whose interests are adverse to the partnership, that relationship should be disclosed in order to avoid any impropriety.” Ultimately, the chancellor found that Blackwell did not owe a duty to disclose any more facts than he had already disclosed regarding his and Felsher’s partnership and that nothing in the record presented indicated that Felsher’s interests were adverse to the Partnership.
¶ 24. Keeping in mind our standard of review, we cannot find that the chancellor’s findings were manifestly wrong, clearly erroneous, or that he applied the incorrect legal standard. Therefore, this issue is without merit.
III. Assessment of Post-Dissolution Fees
¶ 25. White next argues that chancellor erred in not awarding him certain post-dissolution fees. First, he submits the chancellor erred in failing to distribute the post-dissolution fees based on Section 18 of the Agreement. As was discussed above, we find that the chancellor properly applied Section 15 of the Agreement; therefore, we will not address the distribution of fees under Section 18 of the Agreement.
*741 ¶26. Finally, White contends the chancellor “committed manifest error by partially enforcing but failing to fully enforce the plan of dissolution adopted by Blackwell and White pursuant to the [A]greement.” To support this contention, White submits that “he and Blackwell agreed to a plan of dissolution which included a division of the firm’s personal property, the payment of partnership debts[,] and a determination as to the percentage of completion and allocation of fees relating to the pending files, including the Viator file and the Utility Authority file.” According to White, he was to receive forty-five percent of the Viator fee and fifteen percent of the Utility Authority fee per the partnership agreement.
¶ 27. With respect to the Viator fee, White argues the Partnership entered into a contract with Viator on April 13, 2006, and at the time of dissolution, a buyer for the property had been procured entitling White to 45% of the fee. Pursuant to the 1992 amendment to the Agreement, “[a]ll contingent fee cases in which discovery has not completed shall be considered 30% completed.” The chancellor aptly pointed out that nothing in the Agreement provides that White should get 45% of a fee. Blackwell paid White 15% of the fee pursuant to the Agreement since the case was retained before the dissolution but discovery had not yet been completed. Again, we find the chancellor did not err in his finding; therefore, this issue is without merit.
¶ 28. Next, the Utility Authority case that White references in his argument is a bond case. Bond fees are discussed in the 1992 amendment to the Agreement. The Agreement states: “If the firm has been retained and/or the governing authority has adopted a resolution declaring notice of intent to issue the bonds, the work on the issue shall be considered 30% completed.” White argues that based on this language, he and Blackwell should split the 30% fee entitling him to 15% of the fee. The chancellor found differently, and we agree. The Harrison County Wastewater and Solid Waste Management District passed a resolution on May 4, 2006, declaring an intent to issue bonds and retain Blackwell to prepare the documents necessary to proceed with the issuance of the bonds. It is clear that, as of May 1, 2006, the date of dissolution, no resolution had been adopted, and there was no declaration to issue bonds. In Thompson v. Jones County Community Hospital, 352 So.2d 795, 796 (Miss.1977), the supreme court held “public boards speak only through their minutest,] and their actions are evidenced solely by entries on the minutes.” (Citations omitted) The chancellor relied on this premise to support his finding that White was not entitled to a fee from this case. Based on our review of the record, we agree with the chancellor’s finding. The Agreement required the Partnership to be retained and/or a resolution declaring notice of intent to issue the bonds adopted in order for the Partnership’s work to be considered 30% complete; neither of these occurred prior to May 1, 2006.
¶ 29. This issue is without merit.
¶ 30. THE JUDGMENT OF THE CHANCERY COURT OF HARRISON COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, CARLTON, MAXWELL AND RUSSELL, JJ., CONCUR. MYERS, J„ NOT PARTICIPATING.

. Tisdale became an income partner on January 1, 1997, pursuant to an amendment to the Agreement. White and Blackwell became capital partners. She is not at issue in the appeal before us.

. For judicial efficiency and economy, we will discuss issues two and three together in this section.