ON WRIT OF CERTIORARI

KITCHENS, Justice,
for the Court:
¶ 1, Perrieee Collins filed a wrongful death action on behalf of her minor daughter, Shoniqwa, and on behalf of the wrongful death beneficiaries of Shoniqwa’s stillborn daughter, Shataja. Finding that Collins had not shown good cause for her failure to effect service of process upon Dr. Toikus Westbrook, the Circuit Court of Leake County granted Dr. Westbrook’s motion to dismiss. Collins appealed, and this Court assigned her case to the Court of Appeals, which affirmed the decision of the trial court. Collins then filed a Petition for Writ of Certiorari, which this Court granted.
¶ 2. We hold that Collins offered uncon-tradicted proof of “good cause” in explanation of her failure to serve process upon Dr. Toikus Westbrook within 120 days of having filed a civil complaint as required by Rule 4(h) of the Mississippi Rules of Civil Procedure. Collins also established “excusable neglect,” as contemplated by Rule 6(b) of the Mississippi Rules of Civil Procedure, entitling her to an extension of time in which to serve process upon Dr. Toikus Westbrook. Therefore, we reverse the judgments of the trial court and the Court of Appeals and remand this case to the Circuit Court of Leake County for further proceedings.
FACTS
¶ 3. On December 16, 2011, Collins filed a complaint in the Circuit Court of Leake County on behalf of her minor daughter, Shoniqwa Collins, and the other wrongful death beneficiaries of Shataja Nikeara Collins, a stillborn infant. The complaint named Dr. Toikus Westbrook, a physician, and others as defendants and alleged that Dr. Toikus Westbrook’s negligence, including his failure to intervene under circum *925 stances which clearly indicated fetal distress, wrongfully caused the death of the infant. Thus, under the provisions of Rule 4(h), Collins had 120 days, or until April 14, 2012, to serve the complaint and summons on all of the named defendants, including Dr. Toikus Westbrook. M.R.C.P. 4(h).
114. Shane Langston, Collins’s lead attorney, delegated the responsibility of having process served on Dr. Toikus West-brook to his longtime legal assistant. However, during the 120-day period allowed for service upon this defendant, the legal assistant experienced “very extreme personal problems.” A few days before the deadline, Langston realized that the legal assistant had failed to effect service of process on the defendants.
¶ 5. On April 11, 2012, Langston hired Quantum Process, a professional process-serving company in Hattiesburg, Mississippi, to serve Dr. Toikus Westbrook. Robert David “Davy” Keith II, Quantum Process’s owner, using a technique called a “skip trace,” attempted to find an address for Toikus Westbrook. The skip trace results listed two possible addresses for that person: one in New Orleans, Louisiana, and the other in Germantown, Tennessee.[1]
¶ 6. On April 13, 2012, Keith telephoned the residential telephone number at a location that matched the address associated with Dr. Toikus Westbrook in German-town, Tennessee. According to Keith, he left a message on the answering machine for Dr. Toikus Westbrook. Someone, using the Germantown, Tennessee, residential telephone number, returned Keith’s call. Keith explained to the caller that he had a delivery for Dr. Toikus Westbrook. At first, the caller told Keith, “he’s not available.” Keith told the caller that he had a delivery from “Maxim Physicians,” Dr. Toikus Westbrook’s employer. The person on the telephone then said: “Oh, that’s me. You can bring that to me,” claiming that he was on his way to Incredible Pizza, a pizzeria in Germantown. He asked whether Keith' could meet’him there. Keith arranged for Gary Mur-phree, a process server in Memphis, Tennessee, to meet Dr. Toikus Westbrook at Incredible Pizza in nearby Germantown.
¶ 7. According to Murphree, he arrived at Incredible Pizza and asked restaurant personnel to page Toikus Westbrook. An employee then escorted Murphree to a back room where a man was sitting. When Murphree asked the -man whether he was Toikus Westbrook, the man said “yes,” and Murphree, who had hidden the summons and complaint in a pizza box, opened the box, removed the papers, and handed the man the papers. Murphree informed the man: ‘You have now been served.” Murphree executed an Affidavit of Service, in which hé stated that he had served the summons and the complaint on Toikus Westbrook on April 13,2012.
¶ 8. On May 7, 2012, Dr. Toikus West-brook filed a motion to dismiss, arguing that his father, Dr. Jesse Westbrook, actually had been served and that the complaint should' be dismissed because of insufficient service of process. On May 21, 2012, Dr. Toikus Westbrook filed the affidavit of Dr. Jesse Westbrook in support of the motion to dismiss, which had been signed on May 7, 2012. In this affidavit, Dr. Jesse Westbrook averred:
That he is an adult resident citizen of Germantown, Tennessee, over the age of *926 eighteen years and legally competent to give this affidavit.
That he is a dentist practicing in Memphis, Tennessee.
That his home address is 1666 Newsum Drive, Germantown, Tennessee 38138.
That he was , served with process in the above-referenced case on or about April 14,2012.
That he has no personal knowledge of this case other than his son is named Toikus Westbrook, M.D.
That he was not practicing medicine on or about June 30, 2010, at Leake County Memorial Hospital.
¶ 9. On June 14, 2012, Dr. Jesse West-brook executed a second affidavit, in which he stated:
That he is an adult resident citizen of Germantown, Tennessee, over the age Of eighteen years and legally competent to give this affidavit;
That on or about April 16, 2012, he received a telephone call at his home from a man stating that he had some important documents regarding physician services for a “Dr. Westbrook.”
Dr. Jesse Westbrook then identified himself as “Dr. Westbrook.”
The man requested to meet Dr. Jesse Westbrook at his home; however, Dr. Westbrook informed the man that he and his family were headed to dinner at Incredible Pizza in Germantown, Tennessee.
While at Incredible Pizza, a man approached Dr. Westbrook with a pizza box and pulled out some documents.
.The man handed the documents to Dr. Jesse Westbrook and said, “You have now been served.”
The man immediately turned around and left Incredible Pizza.
Dr. Jesse Westbrook did not know the content of these papers until he read them as the process server was leaving. In neither the telephone call' nor the personal meeting did anyone confirm that Dr. Jesse Westbrook was anyone other than “Dr. Westbrook.”
¶ 10. The trial court held the first hearing on Toikus Westbrook’s motion to dismiss in June 2012. The hearing was not transcribed, but the uncontested affidavit of Jessica Murray, an attorney representing Collins at the hearing, stated that neither Dr. Jesse Westbrook nor Dr. Toikus Westbrook attended the hearing and no additional evidence was offered. The trial judge continued the hearing, informing counsel that he would like to consider witness testimony before making a decision about whether process had been served on Dr. Toikus Westbrook.
¶ 11. The second hearing 6n the motion to dismiss was held on October 3’i, 2012. Keith; the owner of Quantum Process, provided the following testimony:
LANGSTON: Mr. Keith, tell Your Hon- or what efforts you were asked to make on behalf of my law firm to serve process on Dr. Toikus Westbrook, in or around April of this year?
KEITH: Around April of this year, I was contacted by your law firm, Lang-ston and Langston, to locate and serve pi’ocess on a Toikus Westbrook. If I[re]call there were several—
THE COURT: Let’s refer to them as junior and senior, so we’ll be sure — or can we not?
LANGSTON: Your Honor, it’s not junior and senior.
THE COURT: All right. What is it?
LANGSTON: The father is Jesse West-brook and this gentleman is Toikus Westbrook. So there aren’t two Toikus-es, I’m sorry.
*927 THE COURT: Dr. Jesse Westbrook is the father’s name; is that right?
LANGSTON: Yes, sir. He’s a dentist, so I understand. , .
THE COURT: All right.
KEITH: I was given, I believe, it was two addresses initially. One was in Picayune and one was in Carthage, if I’m not mistaken. We attempted to serve process on Dr. Toikus Westbrook at both of those locations. He was at neither address. I did further research in order to obtain a current address for Dr. Westbrook.
LANGSTON: What, kind of research did you do?
KEITH: It’s commonly referred to as a locator or a skip trace, and' it’s basically research, computer research that shows reported addresses of people that reside at a given address. -It’s based on — we call credit header information. And when I did a search by the name of Toikus Westbrook, using his past known addresses as a template or as a method to link a newer address, I discovered an address for him in Germantown, Tennessee. I obtained a phone number to the address in Germantown, Tennessee, and called. I believe I called and left a message for Dr. Toikus Westbrook. Someone called me back and ultimately identified himself as Dr. Toikus West-brook. I advised him that I had a delivery for him. He said, you can — I’m going to be leaving my home addre'ss. You can have someone meet me at a pizza parlor— . <
LANGSTON: All right. Let me back up just a moment. In that conversation you had, this was a return call you got; is that correct?
KEITH: Yes, sir.
LANGSTON: And the return caller, when you answered the telephone, how did he identify himself?
KEITH: The conversation- was had, and I told him that I had a delivery for Dr. Toikus Westbrook. . - .
LANGSTON: What did he say'originally? ■ • •
KEITH: He — When I told him that, he said, he’s not available.
LANGSTON: Okay.
KEITH: And . I said, well, I’ve got to give this to him. He’s got to sign for it. And he said, well, what is it about. And I told him it was something to do with a physician. I had found information that Dr. Westbrook was affiliated with the Maxim Physicians. Now, in my experience, I basically told him that I had a delivery regarding Maxim Physicians.
LANGSTON:. Okay.- And so what did he say after that?
KEITH: He said, oh, that’s me. You can bring that to me. And I said, okay. He said, I — that’s me, as in I am Dr. Toikus Westbrook.
LANGSTON: Right.
KEITH: And I said, okay, I can have someone over at your house within a— within the hour. And he stated, well, I’m leaving, going to some pizza place. He gave me the address he also gave me his cell phone number, [sic] It was at that time that I contacted my Memphis, Tennessee process' server, which is Mr. Gary' Murphree, and advised him that we — I had á paper that' needed to be served on a Dr. Toikus Westbrook, and he’d given the information that he would meet him at the said pizza place.
LANGSTON: All right. So you asked him to then—
KEITH: I asked him then to go to the pizza place -and identify Dr, Toikus Westbrook and serve him the papers.
*928 LANGSTON: And do your notes identified [sic] on what day that service at that pizza restaurant, was accomplished? KEITH: It was — I believe that’s going to be April....
¶ 12. Gary Murphree testified about serving Dr. Toikus Westbrook at Incredible Pizza:
LANGSTON: And Mr. Murphree, do you recall in or around April of 2012, you were asked to deliver process to Dr. Toikus Westbrook?
MURPHREE: Yes, I do.
LANGSTON: And tell Your Honor what you were asked to do, who asked you?
MURPHREE: David Keith’s company called me and asked me to serve a paper, told me where the person would be, what time the person would be there. I got the papers in hand, went down to the place of—
LANGSTON: Where did you go?
MURPHREE: It was a pizza place.
LANGSTON: Incredible Pizza?
MURPHREE: Incredible Pizza was the name of it. It was in — off of German-town Road there in Memphis, Tennessee.
LANGSTON: And tell your honor what you did after you got there.
MURPHREE: When I got there, I had one of the employees to page ... Toikus Westbrook. A black female lady came out and she took me back to the — there was a little room back there and there was a gentleman sitting there. I asked him if he was Toikus Westbrook; he said yes. I had the papers in a box. I opened the box, I handed him the papers, and I left.
¶ 13. In addition to testifying at the hearing, both Keith and Murphree submitted affidavits with substantially the same information each had provided in his testimony. Moreover, Collins introduced evidence related to the “skip trace” Keith had performed to identify the address and telephone number of Dr. Toikus Westbrook. The skip trace indicated that the Newsum Drive address in Germantown, Tennessee, was a recent address associated with Dr. Toikus Westbrook.
¶ 14. Neither Dr. Jesse Westbrook nor Dr. Toikus Westbrook appeared at the motion hearing or testified. Instead, Dr. Toi-kus Westbrook relied on the information contained in Dr. Jesse Westbrook’s affidavits dated May 7, 2012, and June 14, 2012. He also submitted his own affidavit in support of his motion to dismiss, which was dated November 15, 2012, more than two weeks after the motion hearing was conducted. In his affidavit, Dr. Toikus Westbrook averred:
That he is an adult resident citizen of New Orleans, Louisiana, over the age of eighteen years and legally competent to give this affidavit.
That his current residence address has been 1542 Debattista Place, New Orleans, Louisiana 70131 since 2005.
That his residence telephone number in New Orleans, Louisiana, has been 504-365-2153 since 2005.
That his father is Jesse Westbrook D.D.S.
That his father, Jesse Westbrook’s, residence address is 1666 Newsum Drive, Germantown, Tennessee 38138.
That his father, Jesse Westbrook’s, residence telephone number is 901-754-4472.
That he has never been served with process in this case.
¶ 15. On February 8, 2013, the trial court entered a judgment of dismissal in favor of Dr. Toikus Westbrook. The court found Dr. Toikus Westbrook had not been *929 served witHin the 120-day period and that Collins had not shown “good cause” or “excusable neglect” to justify an enlargement of time in which to serve him.
DISCUSSION
¶ 16. A trial court’s finding of fact on the existence of good cause for the delay in service of process has been deemed “a discretionary ruling ... and entitled to deferential review.” Rains v. Gardner, 731 So.2d 1192, 1197-98 (Miss.1999). When reviewing fact-based findings, this Court examines “whether the trial court abused its discretion and whether there was substantial evidence supporting the determination.” Id. at 1197.
¶ 17. Mississippi Rule of Civil Procedure 4(h) states:
If a service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint and the party on whose behalf such service was required cannot show good cause why such service was not made within that period, the action shall be dismissed as to that defendant without prejudice upon the court’s own initiative with notice to such party or upon motion.
M.R.C.P. 4(h).
¶ 18. If a process server has executed a return properly, there is a presumption that service of process has occurred. Pointer v. Huffman, 509 So.2d 870, 872 (Miss.1987). The plaintiff’s attorney in this ease, because Murphree had executed an Affidavit of Service, had good reason to believe that service of process had been accomplished upon Dr. Toikus Westbrook. However, this presumption that service has been effected is rebuttable through the use of extrinsic evidence, including the testimony of the party who is contesting service. McCain v. Dauzat, 791 So.2d 839, 842 (Miss.2001). Here, Murphree executed an Affidavit of Service in which he Swore that he had served the summons and the complaint on Dr. Toikus Westbrook on April 13, 2013. Thus, Collins was entitled to a presumption that service of process was effected.' But, Dr. Toikus Westbrook then swore, via affidavit submitted to the trial court, that he did not receive service of process. Moreover, Dr. Jesse Westbrook swore, also via affidavit, that the process server served both the summons and complaint on him at Incredible Pizza in Germantown, Tennessee. Therefore, the trial court did not abuse its discretion in determining that process was not served on Dr. Toikus Westbrook, but that process instead was served on Dr. Jesse Westbrook, and that Dr. Toikus Westbrook had thus rebutted the presumption that service of process was effected properly by Murphree.
¶ 19. We turn to the trial court’s ruling that Collins failed to show good cause why service was not made within 120 days. The Rules of Civil Procedure provide that if a plaintiff can establish “good cause” for failing to serve process on a defendant within 120 days of filing his or her complaint, dismissal is not an appropriate remedy. M.R.C.P. 4(h); see Webster v. Webster, 834 So.2d 26, 28 (Miss.2002) (citing Watters v. Stripling, 675 So.2d 1242, 1244 (Miss.1996)) (“The rule has also been interpreted to require that, if the defendant is not served within 120 days, the- plaintiff must either refile the complaint before the statute of limitations expires or show good cause; otherwise, dismissal is proper.”). “To establish ‘good cause’ the plaintiff must demonstrate at least as much as would be required to show excusable neglect, ‘as to which simple inadvertence or mistake of counsel or ignorance of the rules usually does not suffice.’ ” Webster, 834 So.2d at 28 (citations *930 omitted). Moreover, to demonstrate “good cause,” the plaintiff must show thaUa diligent effort was made .to serve the. defendant in a- timely manner. Foss v. Williams, 993 So.2d 378, 379 (Miss.2008). The plaintiff must show more than that service failed due to “simple inadvertence or mistake of counsel or ignorance .of the rules.” Watters, 675 So.2d at 1243.
¶ 20. This Court has held that “good cause is likely (but not always) to be found when the plaintiffs failure to complete service in timely fashion is a result of the conduct of a third person, typically the process server.” Holmes v. Coast Transit Auth., 815 So.2d 1183, 1186 (Miss.2002) (quoting 4B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1137, at 342 (3d ed.2000)). A plaintiff also may show “good cause” if “the defendant has evaded service of process or engaged in misleading conduct, the plaintiff has acted diligently in trying to effect service or there are understandable mitigating circumstances.... ” Holmes, 815 So.2d at 1186 (quoting 4B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1137, at 342 (3d ed.2000)). “What amounts to ‘good cause’ under any particular set of circumstances is necessarily fact-sensitive.” Lindsey v. United States R.R. Bd., 101 F.3d 444, 446 (5th Cir.1996).
¶ 21. In this case, Collins adduced evidence showing: (1) that through the course of Keith’s research, the address on Newsum Drive in Germantown,. Tennessee, appeared as a current address for Dr. Toikus Westbrook; (2) that through the course of Keith’s research, the telephone number associated with the Newsum Drive home in -Germantown was listed as a residential telephone number associated with Dr. Toikus Westbrook; (3) that Keith called the telephone number associated with the Newsum Drive home and left a message on the answering machine for Dr. Toikus Westbrook; (4). that someone who had received that message at. that telephone number had returned Keith’s call; (5) that Keith told the person on the telephone that he,had a delivery for Dr. Toi-kus Westbrook from “Maxim Physicians,” Dr. Toikus Westbrqok’s employer; (6) that the person on the telephone identified himself as Dr. Toikus Westbrook; (7) that after procéss server Murphree arrived at Incredible Pizza, he paged “Dr. Toikus Westbrook;” (8) that a. lady escorted him to a back room where he served process on a man who identified himself as Dr. Toikus Westbrook; and (9) that Murphree executed an Affidavit of Service in , which he stated that he had served the summons and the complaint on Toikus Westbrook on April 13, 2013.
¶22. We find that the trial court abused its discretion by finding that Collins failed to show good cause. The-record reflects that' Collins made a sufficient showing of good cause for having failed to serve Dr. Toikus Westbrook within 120 days of filing her complaint. Collins presented compelling evidence that there were “understandable mitigating circumstances” excusing Collins’s failure to serve Dr. Toikus Westbrook within 120 days. It is undisputed that Collins’s counsel filed suit within the time allowed by the applicable statute of limitations and assigned to a trusted employee the task of effecting service of process. Due to “very extreme personal, problems,” this person failed to complete the assignment. Upon discovering this deficiency, the attorney immediately took appropriate steps to effect service within what remained of the 120-day period.
¶ 23. The record shows overwhelmingly that Collins’s failure to make timely service of process on Dr. Toikus Westbrook was caused entirely by “the conduct of a *931 third person,” namely, Dr. Jesse West-brook. Holmes, 815 So.2d at 1186, (quoting 4B Charles. Alan Wright & Arthur R. Miller, Federal Practice. and Procedure § 1187, at 342 (3d ed.2000)). The trial court’s finding that Dr. Jesse Westbrook did not misrepresent his identity was not supported by substantial evidence and was an abuse of discretion. The actions of Dr. Jesse Westbrook and/or.Dr.' Toikus West-brook were, at least, misleading. By returning Keith’s call and by agreeing to receive a delivery from Dr. Toikus West-brook’s employer, Dr. Jesse Westbrook interfered with and actually obstructed Collins’s attempts to serve process on Dr. Toikus Westbrook. But for Dr. Jesse Westbrook’s subterfuge, Collins may have been able to serve the real, Dr. Toikus Westbrook within the 120-day period, or she would have been able to file a timely and possibly successful request in the trial court for ah extension of time in which to serve Dr. Toikus Westbrook. The professional process server hired by the plaintiffs attorney, and, ultimately, at the expense of the plaintiff, was misled by what can be viewed only as the deliberate deception of a third party who turned out to be a close relative-of the defendant. This third party’s corrupt conduct caused a false return to be made on process issued by and returned to a Mississippi trial court. No litigant should be rewarded for such treachery-.
¶ 24, The record does not suggest that Collins had reason to suspect that process had been served on any person other than Dr. Toikus Westbrook. After having the summons and complaint served on the person she. had been led to believe was Dr. Toikus Westbrook, the plaintiff reasonably would not have continued to try to serve, him. After all, Murphree had executed an Affidavit of Service, in which he said that he had served the summons and the complaint on Dr. Toikus Westbrook on, April 13, 2012. The Affidavit of Service creates a presumption that service was properly, executed and it is probative of the plaintiffs good-faith belief that the defendant had been served, notwithstanding the trial court’s finding that Dr. Toikus Westbrook, in fact, had not been served process.
¶ 25. Similarly, in Foss v. Williams, 993 So.2d 378, 379 (Miss.2008), the defendant was served one day after the 120-day period had .expired. The plaintiffs counsel argued that, although he had associated local counsel who had been responsible for effecting service, local counsel had-neglected to serve the defendants, and counsel did not discover the omission until 118 days after the complaint had been filed. Id. As in this case, when counsel discovered the omission,, counsel immediately sought to have the defendants served. Id. Local counsel later withdrew from the case. Id. This Court held that “good cause” had been proved because the failure of service was caused by the inaction of another attorney who later had withdrawn from the case, and because counsel had taken immediate action to effect service upon discovering the problem. Id. at 379-80.
¶26. The cases cited by the dissent provide poor support for its conclusion that Collins failed to show good cause. Contrary to the dissent’s position that this Court should, confine its review in this case to the first 118 days, this Court examines what occurred during the entire 120-day period to assess whether good cause was shown. Unlike the facts in this case, in Heard and Holtzman, no attempt at service was made within 120 days. Heard v. Remy, 937 So.2d 939, 944 (Miss.2006); In re Holtzman, 823 So.2d 1180, 1181 (Miss.2002). In this case, Collins attempted service within 120 days, but service was thwarted by the deceptive acts of a third person. Unlike in Heard and Holtzman, Collins had no reason to suspect that time *932 ly service had not been achieved. And Copiah County School District v. Buckner, 61 So.3d 162, 164 (Miss.2011), involved misconduct by a process server, not deceptive acts by the defendant’s relative in an effort to obstruct service of process.
¶ 27. We hold that Collins made a sufficient showing of good cause for her failure to accomplish service of process on Dr. Toikus Westbrook within 120 days and that the trial court abused its discretion by finding otherwise.
¶ 28. Alternatively, Collins argues that, if Dr. Toikus Westbrook rebutted the presumption that service was effected, and’ if she also had not established “good cause” in so doing, she was entitled to an extension of time under Rule 6(b)(2) of the Mississippi Rules of Civil Procedure, which provides:
When by these rules or by notice given thereunder or by order of court an act is required or allowed to be done at or within a specified time, the court for cause shown may ... upon motion made after the expiration of the specified period permit the act to be done' where failure to act was the result of excusable neglect.
M.R.C.P. 6(b)(2).
¶ 29. Collins advanced her. request for an extension of time in multiple filings in the trial court and during the hearing on Dr. Toikus Westbrook’s motion -to dismiss. In her “Response to Motion to Dismiss,” which was filed June 15, 2012, Collins argued that “[i]n the alternative, Plaintiffs request additional time to properly effectuate service on the Defendant [Toikus Westbrook].” Additionally, during the October 30, 2012, hearing regarding Dr. Toi-kus Westbrook’s Motion to Dismiss, Collins moved ore tenus for an extension of time:
[W]e took extraordinary, extreme steps to make sure process was served within the 120 day period, and we had every good faith belief that process had been served on Dr. Toikus Westbrook, because of all the testimony that the Court has — has just heard.
And we only first became aware that they’ve alleged Dr. Toikus Westbrook had not been served, and when they filed their motion to dismiss in May. And we timely and immediately responded to that with, number one, we think we served him, but if that’s not him, that’s when we asked the Court.... That’s, when we asked the Court under Rule 4(c) [sic], in the alternative, for additional time to serve Dr. Toikus Westbrook, if, in fact, he didn’t receive service.
In a brief she filed on November 12, 2012, after the hearing, Collins argued: “Alternatively, the UNDISPUTED Facts Require the Court to Allow Plaintiffs Additional Time to Serve the [Toikus West-brook].” Finally, in a brief filed December 7, 2012, Collins maintained:
Plaintiffs have overwhelmingly shown that good cause exists to extend the 120-day time period within which to effect service of process. As such, a dismissal with prejudice is not justified. Plaintiffs therefore respectfully request this Court to deny Defendant’s Motion to Dismiss and grant to Plaintiffs an extension of time to serve the Defendant, Dr. Toikus Westbrook.
¶ 30. The trial court denied Collins’s motion for an enlargement of time upon a finding that Collins had failed to show excusable neglect. This Court has held that the standards for deciding whether a plaintiff has demonstrated “good cause” under Rule 4(h) and “excusable -neglect” under Rule 6(b)(2) are virtually identical. Watters, 675 So.2d at 1244 (“To establish ‘good cause’ the plaintiff must demonstrate *933 at least as much as would be required to show excusable neglect, as to which simple, inadvertence or mistake of counsel or ignorance of the rules usually does not suffice.”) (internal citations omitted). Because Collins has established good cause for her failure to serve Dr. Toikus West-brook within 120 days of- filing her complaint, she also has proved excusable neglect, entitling her to an extension of time. Collins showed that a professional process server determined that the Newsum Drive home in Germantown, Tennessee, was Dr. Toikus Westbrook’s recent residence. Keith called the residential telephone number associated with this- address and left a message for “Dr. Toikus Westbrook.” Someone returned his call from that number. Keith informed the caller that he had a delivery for Dr. Toikus Westbrook from Maxim Physicians, Dr. Toikus Westbrook’s employer. Finally, Keith sent Murphree to Incredible Pizza to serve Dr. Toikus Westbrook process for this suit. Mur-phree then executed an Affidavit of Service. These facts establish excusable neglect justifying the failure to serve Dr. Toikus Westbrook and entitling Collins to an extension of time to in which perfect service.
CONCLUSION
¶ 31. In sum, we find that Perriece Collins offered sufficient proof of good cause explaining her failure to serve Dr. Toikus Westbrook within 120 days, as required by Rule 4(h) of the Mississippi Rules of Civil Procedure. Moreover, Collins established excusable neglect, as articulated in Rule 6(b) of the Mississippi Rules of Civil Procedure, entitling her to an extension of time to serve process on Dr. Toikus Westbrook. Therefore, we reverse the judgments of the Court of Appeals and the Circuit Court of Leake County. We remand this case to the Circuit Court of Leake County for further proceedings.
¶32. REVERSED AND REMANDED.
WALLER, C.J., RANDOLPH, P.J., AND KING, J, CONCUR. DICKINSON, P.J., CONCURS IN PART AND IN RESULT WITHOUT SEPARATE WRITTEN OPINION. COLEMAN, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY LAMAR, J. MAXWELL, J., NOT PARTICIPATING.