# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2015-CP-01456-COA

KEVIN MCKEOWN                                                          APPELLANT

v.

ELIZABETH ALLISON ESTES                                               APPELLEE

DATE OF JUDGMENT:               08/28/2015
TRIAL JUDGE:                    HON. ROBERT Q. WHITWELL
COURT FROM WHICH APPEALED:      LAFAYETTE COUNTY CHANCERY
                                COURT
ATTORNEY FOR APPELLANT:         KEVIN MCKEOWN (PRO SE)
ATTORNEYS FOR APPELLEE:         T. SWAYZE ALFORD
                                KAYLA FOWLER WARE
NATURE OF THE CASE:             CIVIL - DOMESTIC RELATIONS
TRIAL COURT DISPOSITION:        FOUND APPELLANT IN CONTEMPT FOR
                                VIOLATING CONDITIONS OF A
                                VISITATION ORDER, AND MODIFIED
                                CONDITIONS OF THE VISITATION
                                ORDER
DISPOSITION:                    AFFIRMED - 03/07/2017
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE GRIFFIS, P.J., BARNES AND CARLTON, JJ.**

**BARNES, J., FOR THE COURT:**

¶1.     After New York courts awarded Elizabeth Allison Estes physical custody of her son and authorized their move from New York City to Oxford, Mississippi, the New York County Family Court entered an order awarding visitation to the child's father, Kevin McKeown, who remained in New York City. Among other things, the New York visitation order obligated Kevin to provide Allison with advance notice of his visitation, an itinerary, and the address where he would be staying with their son.

¶2. This appeal follows Allison's successful complaint for contempt and modification of the New York visitation order. The Lafayette County Chancery Court found Kevin in contempt for his failure to fulfill the notice, itinerary, and address-disclosure requirements of the New York visitation order. The chancellor further held that Kevin's visitation would be suspended until he disclosed his physical address. Additionally, the chancellor modified the visitation order so that Kevin would have to exercise his visitation in Mississippi if he did not fulfill the notice, itinerary, and address-disclosure conditions of his visitation.

¶3. Kevin appeals and claims that the chancellor should not have heard Allison's complaint because he had taken preliminary steps to appeal the New York County Family Court's decision that Mississippi was the proper forum for Allison's complaint. He also claims that the process server lied about personally serving him with process. Finally, Kevin argues that the chancellor did not consider the child's best interest. Finding no error, we affirm the chancellor's judgment.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

¶4. In April 2012, a New York state court awarded Allison sole legal and physical custody of her son. After obtaining leave from the First Department of the New York Supreme Court, Appellate Division, Allison and her son moved to Oxford, where her family lived. *Kevin McK. v. Elizabeth A.E.*, 111 A.D.3d 124, 129 (N.Y. App. Div. 2013).

¶5. The New York County Family Court subsequently entered a visitation order. Along with visitation during certain holidays, Kevin received "eight uninterrupted weeks" of summer visitation. Kevin was obligated to provide Allison with notice regarding their son's

2

travel arrangements. And if either parent traveled with the child, he or she was obligated to provide the other with an itinerary for the trip, including contact information and the location where the child would be staying. If Kevin did not have his own residence, he had to provide Allison with "an affidavit from the legal resident of the home where [the child] shall be staying indicating [the legal resident's] willingness and availability" to have Kevin and his son as guests.

¶6. In November 2014, Allison filed a complaint in chancery court. She claimed that Kevin was in contempt of the New York visitation order because he would not give her an itinerary for his visitation or an affidavit from the resident where he and the child would be staying during visitation. Allison also requested modification of the visitation order so that Kevin would be required to inform her of his physical address by giving her "a copy of his valid driver[']s license . . . prior to exercising any visitation."

¶7. At least five summonses were issued for Kevin between November 14, 2014, and December 29, 2014. All of them indicated that his mailing address was a post-office box in New York City. The record contains a process server's return reflecting that Kevin had been personally served with process in New York City on February 6, 2015.

¶8. During an April 2015 telephonic hearing, the chancellor and Judge Jane Pearl of the New York County Family Court discussed whether Mississippi was the proper jurisdiction for Allison's complaint. Allison's Mississippi and New York attorneys participated in the hearing; as did the child's New York court-appointed attorney, and Kevin, who has consistently proceeded pro se. Ultimately, Judge Pearl "decline[d] continuing jurisdiction"

3

because New York was an inconvenient forum for Allison's complaint. Kevin has appealed Judge Pearl's decision, but his appeal remains unresolved at this time.

¶9. In June 2015, Kevin sent a letter directly to the chancellor. According to the letter, Kevin "only learned yesterday of certain purported filings" regarding Allison's complaint. Kevin did not specify what "purported filings" he had recently discovered, nor how he had discovered them.[1] In any event, Kevin claimed that the New York process server, attorney David Chidekel, had lied about personally serving him with process. He attached a 2003 article from the New York Daily News reporting a third-party claim that Chidekel had "admitted he was lying to help a client" in an unrelated criminal matter. Finally, Kevin's letter indicated that he was appealing Judge Pearl's decision that Mississippi was the proper forum for Allison's complaint.

¶10. The chancellor responded that Kevin should not contact him directly, but "should file whatever pleading [he] desired" with the chancery clerk. The chancellor also said that Allison's contempt action would "continue [in Mississippi] until [he] receive[d] proper notice of [Kevin's New York] appeal . . . ." On August 14, 2015, the chancellor entered an order stating "[t]hat since June 26, 2015, [the chancellor had] received no Notice of Appeal" from Kevin. The order went on to state that the trial on Allison's complaint was scheduled for August 28, 2015. The day before the trial, the chancery clerk received copies of the amended notice of appeal that Kevin had filed in New York.

---

[1] Kevin must have known that Allison had filed a complaint in Mississippi, because he participated in the telephonic hearing to determine whether Mississippi was the proper jurisdiction for her complaint, and he had taken preliminary steps to appeal Judge Pearl's decision declining continuing jurisdiction.

¶11. When Allison's trial convened on August 28, 2015, Kevin did not attend. Allison's lawyer discussed the fact that Kevin had just filed an amended notice of his New York appeal with the chancery clerk. The chancellor commented that he had "no notice of anything from any lawyer or judge saying . . . this case is stayed [or the New York Family Court's] ruling is stayed pending the appeal," and he did not know whether Kevin had perfected his New York appeal. After additional preliminary discussions with Allison's lawyer, the chancellor heard Allison's testimony.

¶12. Allison testified that she did not want to reduce or modify the amount of Kevin's visitation, but he had not been complying with the New York visitation order. More specifically, she said that Kevin had not been providing her with adequate notice regarding when he planned to exercise his summer visitation. Although Kevin was obligated to inform her of when he would exercise his summer visitation by May 1, he did not send her notice until "the middle of June." And the New York visitation order obligated Kevin to provide Allison with an itinerary, but he initially refused to do so. He later sent an itinerary with which he did not comply so Allison "never knew where [her son] was for a good portion of the month or so that he was" with Kevin.

¶13. Allison had made arrangements to pick her son up from the airport on the day Kevin said he would return him, but the night before, Kevin called and said their son would not be coming back that day. For the next week, Allison could not contact Kevin or her son. Kevin eventually called Allison's father and said he was putting the child on a plane. Because Allison was traveling for work, she had to ask other people to pick up her son from the

airport. According to Allison, Kevin had exercised his visitation five times, and he had never complied with the notice or itinerary requirements in the New York visitation order. Additionally, she never knew where her child went during Kevin's visitation, because he refused to disclose his physical address or where he would be staying with their son.

¶14. After finding Kevin in contempt of the New York visitation order, the chancellor suspended his visitation until he provided Allison with proof of his physical address. The chancellor further held that Kevin would be obligated to provide Allison with adequate notice when he planned to exercise his visitation, or he would have to exercise his visitation in Mississippi. The chancellor also awarded Allison approximately $2,200 in attorney's fees and other expenses. Kevin appeals.

## STANDARD OF REVIEW

¶15. An appellate court "applies a limited standard of review on appeals from chancery court." *Isom v. Jernigan*, 840 So. 2d 104, 106 (¶6) (Miss. 2003). We "will not disturb the findings of a chancellor when supported by substantial evidence unless the chancellor abused his discretion, was manifestly wrong [or] clearly erroneous[,] or [applied] an erroneous legal standard[.]" *Sanderson v. Sanderson*, 824 So. 2d 623, 625-26 (¶8) (Miss. 2002) (citation omitted).

## ANALYSIS

### I. Kevin's New York Appeal

¶16. First, Kevin claims that the chancellor "committed plain and reversible error by ignoring [his] own directive that the court had not formally been advised of a pending appeal

6

regarding jurisdiction." Kevin notes that the day before Allison's trial, the chancery clerk received a copy of his New York notice of appeal. Kevin reasons that the chancellor should not have heard Allison's complaint.

¶17. First and foremost, Kevin does not cite any authority to support his claim under this heading. The failure to cite relevant authority renders an issue procedurally barred. *Gary E. White Attorney P.A. v. Blackwell*, 96 So. 3d 733, 738 (¶13) (Miss. Ct. App. 2011). Notwithstanding the procedural bar, we find no merit to this issue.

¶18. Kevin is correct that in response to his June 2015 letter, the chancellor stated that Allison's "case will continue here until [he] receive[s] proper notice of the appeal . . . ." Kevin later sent the chancery clerk papers regarding the status of his New York appeal. Despite the chancellor's statement, we do not find that the chancellor was obligated to stay the Mississippi proceedings simply because Kevin had taken preliminary steps to perfect his New York appeal.

¶19. Under Mississippi law, a chancellor can modify another state's visitation order if the chancellor would have jurisdiction to make an initial determination, and "[t]he court of the other state determines it no longer has exclusive, continuing jurisdiction . . . or that a court of this state would be a more convenient forum . . . ." Miss. Code Ann. § 93-27-203(a) (Rev. 2013).[2] Furthermore, it is within a Mississippi court's discretion to go forward with "a proceeding to modify a child custody determination" – which includes aspects of a

---

[2] To be precise, section 93-27-203(a) refers to another state's "child custody determination," and that term includes "a judgment, decree, or other order of a court providing for the legal custody, physical custody, *or visitation* with respect to a child." Miss. Code Ann. § 93-27-102(c) (Rev. 2013) (emphasis added).

noncustodial parent's visitation – when there is a similar proceeding in another state. Miss. Code Ann. § 93-27-206(3)(c) (Rev. 2013). We find that the chancellor did not err when he heard Allison's complaint despite Kevin's then-unperfected[3] New York appeal.

## II. Credibility of the Process Server

¶20. Next, Kevin claims the chancellor "improperly ignored the . . . unethical behavior of . . . Chidekel, who publicly admitted to lying in, and to, a court of law by filing false court submissions, including sworn affidavits." As mentioned above, in June 2015, Kevin sent the chancellor a copy of a 2003 article reporting that, in a completely unrelated criminal matter, a prosecutor had claimed that Chidekel admitted that he lied to help a client. Kevin concludes that Chidekel lied about serving him with process; so the chancellor erred when he heard Allison's complaint. Kevin failed to cite any authority to support this claim. Thus, the issue is also procedurally barred. *Blackwell*, 96 So. 3d at 738 (¶13).

¶21. Procedural bar notwithstanding, the record contains a return from Chidekel, who swore that he personally served Kevin with process. "If a process server has executed a

___

[3] In Mississippi, an appeal is perfected by filing a notice of appeal. M.R.A.P. 3(a). That is not the case in New York. *See* N.Y. Comp. Codes R. & Regs. tit. 22, § 600.11(a)(3)-(b)(1) (providing that an appeal to the Appellate Division of the New York Supreme Court is perfected when a party files a "note of issue" and an appellate brief). Kevin has recently sent this Court documents indicating that he filed his New York appellate brief on December 5, 2016, and he is proceeding under "Article 6 of [New York's] Family Court Act." Kevin has not, however, cited any authority that his New York appeal acts as a stay of Judge Pearl's ruling. Additionally, section 1114(a) of New York's Family Court Act provides that "[t]he timely filing of a notice of appeal under this article does not stay the order from which the appeal is taken." N.Y. Fam. Ct. Act § 1114 (McKinney 2010). Although section 1114(b) states that "a justice of the appellate division . . . may stay execution of the order from which the appeal is taken[,]" Kevin has not provided this Court with such an order.

return properly, there is a presumption that service of process has occurred." *Collins v. Westbrook*, 184 So. 3d 922, 929 (¶18) (Miss. 2016). That presumption is "rebuttable through the use of extrinsic evidence, including the testimony of the party who is contesting service." *Id*. Kevin did not provide any support for his implication that Chidekel had not served him with process. It was within the chancellor's discretion to find that the unrelated 2003 article Kevin submitted was inadequate to rebut the presumption that he had been served with process.

¶22. Kevin also argues that the chancellor ignored his "right of due process regarding sewer service by the admitted-lying attorney Chidekel . . . ." "Generally, due process requires notice and a meaningful opportunity to be heard." *Virk v. Miss. Dep't of Revenue*, 133 So. 3d 809, 815 (¶13) (Miss. 2014). The chancellor expressly informed Kevin that he should file anything he desired with the chancery clerk. Kevin never subsequently filed anything that could be considered as a motion contesting service of process. It is unclear how the chancellor could have denied Kevin notice or an opportunity to be heard on a motion that Kevin never filed. "[I]n the absence of an objection and offer of proof by [a party, his] due-process argument is without substantive merit." *Wilburn v. Wilburn*, 991 So. 2d 1185, 1192 (¶16) (Miss. 2008). This issue is meritless.

### III.    Child's Best Interest

¶23. Finally, Kevin claims that the chancellor showed "little regard to the best interest of [the child], [and] bias and poor discretion in ignoring the 'totality of the circumstances.'" Kevin does not elaborate regarding how the chancellor allegedly showed bias or ignored the

totality of some unspecified circumstances.[4]  In any event, Kevin cites *Ash v. Ash*, 622 So.

2d 1264, 1266 (Miss. 1993), as support for his very brief claim.

¶24.   *Ash* did not involve modification of visitation conditions.  Instead, *Ash* followed an

order modifying custody of a child.  *Id*. at 1265-67.  The mother's "continued refusal" to

allow the child to visit his father led to custody modification.  *Id*. at 1266.  But *Ash* does not

support Kevin's claim that the chancellor erred by modifying certain conditions of Kevin's

visitation.  Kevin does not argue that the modified conditions are unreasonable.  Moreover,

Kevin does not attempt to explain how those conditions are somehow contrary to the child's

best interest, or how they could negatively impact his relationship with his son.

¶25.   "To modify a visitation order, it must be shown that the prior decree for reasonable

visitation is not working and that a modification is in the best interest of the child."

*Moreland v. Spears*, 187 So. 3d 661, 666 (¶17) (Miss. Ct. App. 2016).  "The chancellor is

granted 'broad discretion' in visitation determinations[,] and [an appellate c]ourt will not

reverse a chancellor's findings of fact so long as they are supported by substantial evidence

in the record."  *Wilburn,* 991 So. 2d at 1194 (¶20).  "[T]he best interest of the child is the

main concern in determining visitation."  *Id*. at (¶23).

¶26.   Allison testified that the New York visitation order was not working because Kevin

was not complying with it, and there were no consequences for his noncompliance.  When

---

[4] In his reply brief, Kevin argues that the chancellor erred because the child did not testify regarding his preference.  Arguments raised for the first time in a reply brief are procedurally barred.  *Ogunbor v. May*, 204 So. 3d 840, 848 (¶33) (Miss. Ct. App. 2016). Additionally, Kevin cites no authority to support his claim that the child's preference had any bearing in the proceedings before the chancellor.

he provided late, last-minute notice that he would exercise his summer visitation, it was difficult to prepare their child for his long interstate trip. Kevin also failed to return the child when he said he would; so the child missed activities that had been scheduled in advance. Additionally, Allison was not able to contact the child during Kevin's visitation, and Kevin would not disclose the child's location. Modifying the visitation order to provide specific provisions rather than ones that are flexible and vague was in the child's best interest, because it tends to foster a more positive and harmonious relationship between Allison and Kevin. *See Cox v. Moulds*, 490 So. 2d 866, 869 (Miss. 1986). Consequently, we find that the chancellor did not act contrary to the child's best interest, and it was within his discretion to modify the New York visitation order.

¶27. We recognize that "[a]bsent extraordinary circumstances, the noncustodial parent during visitation should have broad authority and discretion with respect to the place and manner of visitation." *Jaggers v. Magruder*, 129 So. 3d 965, 969 (¶21) (Miss. Ct. App. 2014). The chancellor's decision does not impact Kevin's broad authority and discretion regarding where he takes his son during his visitation periods. He must simply inform Allison where he will be exercising it, and provide her with adequate notice before he does so. Considering the distance between Oxford and New York City, those conditions are not unreasonable. This issue is meritless.

¶28. **THE JUDGMENT OF THE LAFAYETTE COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.**

   **LEE, C.J., IRVING AND GRIFFIS, P.JJ., ISHEE, CARLTON, FAIR, WILSON AND WESTBROOKS, JJ., CONCUR. GREENLEE, J., NOT PARTICIPATING.**

11