## IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

### NO. 2023-CA-00063-COA

JAMICA DEERE                                                    APPELLANT

v.

HERMAN TAYLOR AND HIS SON JAMARCUS                    APPELLEES
M. LEWIS, AND ESTATE OF HERMAN
TAYLOR, DECEASED

DATE OF JUDGMENT:               12/15/2022
TRIAL JUDGE:                    HON. STEVE S. RATCLIFF III
COURT FROM WHICH APPEALED:      MADISON COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:         KIMBERLY CELESTE BANKS
ATTORNEYS FOR APPELLEES:        MARK C. CARROLL
                                LUKE ENTERKIN WHITAKER
NATURE OF THE CASE:             CIVIL - PERSONAL INJURY
DISPOSITION:                    REVERSED AND REMANDED - 09/10/2024
MOTION FOR REHEARING FILED:

**EN BANC.**

**McCARTY, J., FOR THE COURT:**

¶1.    A woman filed a lawsuit for damages after a car wreck. She tried to serve the defendants but was unsuccessful, and the case grew stale. Months later, she filed another lawsuit alleging the same causes of action against the same defendants. She was subsequently allowed to file an amended complaint and given an extension of time to serve the defendants. The circuit court dismissed this second lawsuit for two reasons: for violating the doctrine against claim-splitting, and for insufficient service of process.

¶2.    In light of a recent decision from the Mississippi Supreme Court, and given the unique facts of this case, we find the dual policy reasons forbidding claim-splitting were not

triggered in this case. Judicial economy was not strained by the second filing, and it did not work a hardship on the defendants. As a result, we reverse the trial court's dismissal as to the claim-splitting grounds.

¶3. Furthermore, as to service of process, we agree with the trial court that service was not completed in a timely fashion. However, misleading and deceptive conduct benefitting the defendant demonstrated good cause for an extension of time, and we also reverse the trial court's dismissal on sufficiency-of-process grounds.

¶4. Therefore, we reverse the order dismissing Deere's amended complaint and remand to the trial court for further proceedings.

## BACKGROUND

¶5. Jamica Deere was involved in a car accident with Jamarcus Lewis on October 5, 2018. Deere filed a complaint in Madison County Circuit Court against Lewis and the car's owner, Herman Taylor, in April 2021.[1] That case was assigned to the Honorable Dewey Arthur. Summonses were issued, and Deere took steps to try and serve Lewis and Taylor. After several unsuccessful attempts, the complaint remained unserved. The case was not pursued any further and went stale.

¶6. Approximately 160 days after the summonses were issued, Deere filed a second complaint against the same defendants in the same circuit court. This case was filed on October 5, 2021, and was assigned to the Honorable Steve Ratcliff. Meanwhile, the original

---

[1] The complaint alleged Lewis was negligent in causing the wreck, and Taylor negligently entrusted Lewis with Taylor's vehicle. Unbeknownst to Deere, Taylor died before the complaint was even filed.

2

action remained pending, with process still unserved. Deere did not initially obtain an issued summons for the second lawsuit. Rather, approximately 111 days after the filing, she sought leave to amend her second-filed complaint. Having learned that Taylor died and that Lewis was Taylor's son, Deere's motion to amend included a request to substitute Taylor's estate as a defendant and to have more time to serve the summons and complaint. The trial court granted this relief and extended her deadline for service of process. Deere then amended the second-filed complaint and, a month later, obtained issued summonses. She subsequently served the defendants on the last day before the extended deadline expired.[2]

¶7.     The defendants filed a motion to dismiss the second-filed lawsuit based upon insufficiency of process and insufficiency of service of process. They also argued the three-year statute of limitations for Deere's negligence-based claims had lapsed.

¶8.     Afterward, the defendants informed the trial court that they learned there was a prior, unserved lawsuit sitting on the docket in the same county. The defendants argued that Deere had "improperly filed a new complaint, with a new cause number, against the same defendants alleging the same causes of action, on October 5, 2021[,] while the April 28, 2021 complaint and issued summonses" were still pending.

¶9.     In the meantime, the first-filed lawsuit was flagged by the Madison County Circuit Clerk as subject to dismissal for want of prosecution. Judge Arthur dismissed the first action as stale, finding the circuit clerk's motion well-taken because notice "had been given to all attorneys of record, no action of record ha[d] been taken during the preceding twelve months,

---

[2] A closer examination of the timeline relating to service of process is contained within Part II of this opinion.

3

nor [had] any application [been] made to the court and good cause shown as to why the case should not be dismissed."

¶10. Sixty-one days after the dismissal of the first action, Judge Ratcliff heard argument on the motion to dismiss the second lawsuit. Defense counsel argued that a party may not assert a second, identical lawsuit while the first one is pending. Rather, "the proper mechanism would have been for [Deere] to come in and ask Judge Arthur for additional time."

¶11. In response, Deere's counsel argued she "never prosecuted [the first lawsuit] because we never could find anybody," and "[t]hen we discovered later on that Herman Taylor was deceased."

¶12. At the close of the hearing, the circuit court gave the parties a week to file supplemental briefing on "whether [Deere] could maintain two identical suits at the same time" and on a second issue pertaining to service of process.

¶13. Lewis presented two affidavits, one from himself and one from a relative, stating service of process was improper because he was not personally served, and he did not live at the address where process was served.

¶14. In response, Deere submitted an affidavit from a law enforcement officer who was hired to locate and serve Lewis, and Deere submitted an affidavit from a different process server who actually ended up serving the summons and complaint on Lewis' relative. The deputy testified he believed Lewis not only had outstanding warrants for arrest but also that Lewis' relatives were actively misleading the deputy as he was attempting to serve process.

4

¶15. Subsequently, the trial court dismissed Deere's second-filed action, finding that "upon review, the [c]ourt determine[s] the complaints to be identical." The court's order stated,

> [T]he [c]ourt finds that [Deere] violated the prohibition against duplicative actions by filing the complaint in this action while [the first case] was still pending. [Deere] either chose not to or was unable to effectuate service within 120 days on her [first] Complaint and instead of dismissing the case and refiling it, she filed the same complaint a second time while the first cause of action was still pending. That was improper and a violation of the rule prohibiting duplicative actions. For that reason, the [c]ourt grants defendants' motion to dismiss.

Further, the trial court found that at the time of its ruling, the three-year statute of limitations for Deere's claims had lapsed. According to the court, because the second action was "an impermissible duplicative action" and "the statute of limitations has now expired, dismissal will be with prejudice."

¶16. In the alternative, the trial court found service of process insufficient because Deere served it at an address that was not confirmed to be Lewis' residence. The court also found Deere did not show good cause for her failure to properly serve Lewis within the time period required.

¶17. Deere moved for reconsideration, which was denied. Aggrieved, she appeals.

**STANDARD OF REVIEW**

¶18. "The standard of review for a trial court's grant or denial of a motion to dismiss is de novo." *Long v. Vitkauskas*, 228 So. 3d 302, 304 (¶5) (Miss. 2017).

**DISCUSSION**

¶19. Deere raises two general issues on appeal. First, whether her second-filed complaint was barred by the claim-splitting doctrine and the statute of limitations, warranting dismissal

5

with prejudice. Second, whether service of process for her amended complaint was improper and untimely without good cause, warranting dismissal without prejudice.

## I. The second-filed complaint was not barred by the claim-splitting doctrine.

¶20. On appeal, Deere asserts that the circuit court erred when it ruled that she violated Mississippi's prohibition against duplicative actions by filing the second lawsuit while her first action was still pending. She specifically argues that because she did not pursue the first case and left it "totally unlitigated" after she was unsuccessful in attempting to serve the defendants, it was not "pending" or being "maintained" when the second action was filed.

¶21. "[T]he question of whether the claim-splitting doctrine is applicable to a case is a question of law reviewed de novo[.]" *Carpenter v. Kenneth Thompson Builder Inc.*, 186 So. 3d 820, 823-24 (¶8) (Miss. 2014).

¶22. "Claim-splitting . . . occurs when a plaintiff attempts to bring a duplicative action involving claims arising from a single body of operative facts against the same defendants." *Id.* at 824 (¶10). "Plaintiffs have no right to *maintain* two actions on the same subject in the same court, against the same defendant at the same time." *Id.* at 824 (¶11) (emphasis added).

¶23. Claim-splitting is a protective device for the court system. "'[I]n accordance with public policy, partially to conserve the courts' time but probably in the main to prevent the hardship upon a defendant of unnecessary piecemeal litigation, *a single cause of action cannot be split* so as to be properly *made the subject of different actions*[.]'" *Harrison v. Chandler-Sampson Ins. Inc.*, 891 So. 2d 224, 234 (¶30) (Miss. 2005) (emphasis added). Crucially, "'the claim-splitting rule exists to allow trial courts to manage their dockets and

dispense with duplicative litigation.'" *Heritage Hunter Knoll LLC v. Lamar County*, 356 So. 3d 91, 98 (¶32) (Miss. 2023) (quoting *Carpenter*, 186 So. 3d at 824 (¶12)).

¶24.    Our Supreme Court has explained, "[t]he rule against splitting a cause of action and the reasons for it, [are] stated in Restatement, Judgments, § 62":

> Where a judgment is rendered, whether in favor of the plaintiff or of the defendant, which precludes the plaintiff from thereafter maintaining an action upon the original cause of action, he cannot maintain an action upon any part of the original cause of action, although that part of the cause of action was not litigated in the original action[.]

*Alexander v. Elzie*, 621 So. 2d 909, 910 (Miss. 1992). Generally speaking, this rule only applies when the first case was maintained or was already actively being pursued in another litigation proceeding since "[c]laim splitting occurs when a plaintiff attempts to bring in a second forum claims that were part of a single body of operative facts *already litigated* in another forum." *Gray v. Univ. of Miss. Sch. of Med.*, 996 So. 2d 75, 81 (¶17) (Miss. Ct. App. 2008) (emphasis added) (citing *Channel v. Loyacono*, 954 So. 2d 415, 424 (¶32) (Miss. 2007)).[3]

¶25.    Although not raised as his original reason for dismissal, Lewis eventually argued to

---

[3] Pertinent to the facts of this case, our Supreme Court has also expressed,

> the arrival of the final judgment to one of two pending duplicative actions does not eliminate the relevance of a claim-splitting analysis; the question simply becomes, not whether a final judgment *will* preclude the duplicative litigation, but whether the final judgment that has now arrived *currently* precludes the duplicative litigation.

*Carpenter*, 186 So. 3d at 826 (¶15). "[A] judgment on the substantive merits of the case and a dismissal of parties with prejudice due to procedural bars are final judgments that will preclude the parties from further litigation on the same set of facts." *Id.*

the trial court that Deere's second-filed complaint constituted a duplicative action that split her claims. While the second complaint was later amended, it is apparent from the docket that the first and second complaints are completely identical documents.

¶26. But that is not what claim-splitting prohibits. The important distinction in this case is that Deere's first complaint was not "maintained" in the sense of pursuing two separate actions. After the bare act of filing the first complaint and issuing summons that same day in April 2021, Deere never filed any other motions or took any further steps with that case file. It went completely cold. Indeed, it was dismissed sixty-one days before the hearing in the circuit court related to the motion to dismiss the second complaint.

¶27. Precedent tells us there are two public policy reasons why claim-splitting is prohibited: to protect scarce judicial resources and to minimize the hardship on defendants who are forced to repeatedly defend the same action. *See Harrison*, 891 So. 2d at 234 (¶30). Nothing Deere did or did not do in this case burdens either of these two policy concerns, as there is zero evidence in the record that her cases wasted judicial resources or worked any kind of hardship on the defendants. Indeed, the record is clear that the first complaint was never even served. In Lewis' appellee's brief, his counsel emphasizes, "**Lewis and Herman Taylor were unaware that Deere #1 even existed**," since they were never served. Yet that point, made emphatically by the appellees, concretely shows that the public policy underlying the prohibition on claim-splitting is simply not present.

¶28. In this way, the case at hand is similar to a recent decision by our Supreme Court, which found that claim-splitting had not occurred under comparable facts. *Warrington v.*

8

*Watkins & Eager PLLC*, 371 So. 3d 1277, 1284 (¶30) (Miss. 2023).  After a plane crash, one of the parents of the survivors retained a law firm to file a suit against the Federal Aviation Administration.  *Id*. at 1279 (¶2).  But no complaint was filed, and the statute of limitations ran. *Id*. at 1279 (¶3). The mother of the survivor then filed suit against the law firm.  *Id*. at 1279 (¶4). After it was filed, the firm then representing the family determined it needed to add new defendants, but for a variety of reasons chose the impractical path of filing another lawsuit instead of merely amending the pleading. *Id*. "Twelve days later," the firm voluntarily dismissed the first complaint. *Id*.  Nonetheless, the defendants sought dismissal based on claim-splitting, and the trial court agreed, dismissing the second suit. *Id*. at 1279 (¶5).

¶29.    The Supreme Court unanimously reversed. *Id*. at 1284 (¶30). In so doing, the Supreme Court heavily focused on the same two public policy reasons underpinning all claim-splitting actions—to "eliminat[e] duplicative litigation and for docket control" since "[b]y spreading claims around, parties waste scarce judicial resources and undermine the efficient and comprehensive disposition of cases." *Id*. at 1284 (¶28) (cleaned up).  The Supreme Court reckoned the family had not split their claims against the law firm for three core reasons even though they had filed a second lawsuit when the first one was still pending. *Id*. at 1283 (¶24).

 ¶30.   First, they "did not receive a judgment against Watkins & Eager and then after that judgment was satisfied, file another lawsuit against Watkins & Eager along with other Defendants based on the same accident;" second, they promptly took action to voluntarily dismiss their original complaint and, importantly, "did not file the second action to sidestep a procedural bar . . . or to preserve a claim after he failed to follow court rules[.]" *Id*. at 1283

9

(¶¶24-25, 27) (citation omitted). Because of these extenuating circumstances, the Supreme Court determined "[t]he doctrine of claim splitting is inapplicable in this case." *Id*. at 1284 (¶29). As a result, the Court reversed and remanded "with instructions to reinstate Complaint II and to proceed with litigation." *Id*. at 1284 (¶30).

¶31.    Similarly here, Deere did not first receive a judgment against Lewis and Taylor before she filed her second lawsuit. Indeed, just a few months had passed before the filing of the second complaint. While Deere did not act as prudentially as the family in *Warrington* by voluntarily dismissing her first-filed action, the result is the same. Deere chose to let the first filed action remain dormant on the docket, where the circuit court clerk eventually dismissed it for failure to prosecute by the circuit clerk. Indeed, it was dismissed sixty-one days *before* the circuit court *even heard arguments* on the motion to dismiss the second lawsuit. And like *Warrington*, it is clear Deere was not trying to evade some procedural bar that had tripped up her first case. Deere never even served the first complaint, and it was not maintained or pursued in any fashion at all partly because she could not find the defendants to serve them.

¶32.    There are important policy implications underpinning the doctrine of claim-splitting. It is essentially a safety mechanism to minimize the active manipulation of the court system for a party's benefit. But this case does not involve a lawyer trying to forum shop; Deere refiled in the same county. This case does not show a plaintiff trying to double-dip; she sued the same people for the same causes of action. And this case did not wear out the court system; the first case was not actively pursued or litigated. The shade cast by the *Warrington* decision is broad and covers the specific procedural posture of this case.

10

¶33. Deere's second complaint is more properly characterized as replacing the first complaint, not duplicating it. In fact, prior to amendment, the two complaints were literally identical, which even Lewis concedes. As a result, the problems presented by active claim-splitting, like forum manipulation or juggling defendants, are not present; indeed, the named defendants, underlying facts, and claims for relief are letter-for-letter exact.

¶34. Because Deere "united in one proceeding all matters regarding [her] cause of action against the Defendants" and "the theory behind claim splitting is not present here," the claim-splitting doctrine was just not triggered by the filing of the second complaint. *Warrington*, 371 So. 3d at 1284 (¶29) (internal quotation marks omitted). Based on the facts presented, we find that the claim-splitting doctrine is not triggered and should not have been imposed to dismiss Deere's second-filed action.

## II. Service of process deficiencies did not warrant dismissal because "good cause" was shown.

¶35. The trial court found improper service of process was a separate, additional ground warranting dismissal of Deere's second-filed complaint. On appeal, Deere claims that the trial court's determination that service of process was improper is not supported by substantial evidence. She argues the court erred when it determined that Lewis successfully rebutted the presumption of proper service.

¶36. "As a basic principle of pre-trial practice, plaintiffs are required to serve defendants with a copy of the complaint and summons within 120 days of filing the complaint in order to effectively put defendants on notice of a pending lawsuit." *Hadley v. FedEx Ground Package Sys. Inc.*, 363 So. 3d 836, 840 (¶8) (Miss. Ct. App. 2019) (citing MRCP 4(h)). Our

11

rules require that "[a] plaintiff who does not serve the defendant within the 120-day period must either re-file the complaint before the statute of limitations ends or show good cause for failing to serve process on the defendant within that 120-day period." *Holland v. Miss. Dep't of Rehab. Servs.*, 287 So. 3d 289, 292 (¶8) (Miss. Ct. App. 2019) (quoting *Watters v. Stripling*, 675 So. 2d 1242, 1244 (Miss. 1996)).

¶37. "When service of process is contested, the trial court must make findings to resolve disputed issues of fact[,]" and it "may make such findings based on affidavits with or without live testimony or depositions." *Villavaso v. S.H. Anthony Inc.*, 309 So. 3d 587, 594 (¶20) (Miss. Ct. App. 2020) (quoting *Span ex rel. Span v. Nichols*, 306 So. 3d 781, 791 (¶33) (Miss. Ct. App. 2020)). With regard to service of process, we review "whether the trial court abused its discretion and whether there was substantial evidence supporting the determination." *Collins v. Westbrook*, 184 So. 3d 922, 929 (¶16) (Miss. 2016). "[D]ismissal of the plaintiff's case with prejudice is warranted" only if the "defendant [was] not properly served and the statute of limitations has expire[d]." *Hadley*, 363 So. 3d at 840 (¶8).

¶38. After Deere's motion for time, the trial court gave her an extension until May 5, 2022, to serve Lewis with the summons and amended complaint. Deere's counsel hired Deputy Young and a process server, Eugene Luckett, to help effectuate service of process. Multiple attempts were made to locate Lewis in order to personally serve him, but they were unsuccessful. According to Luckett's proof of service, "[a]fter exercising reasonable diligence," he completed the return, stating: he served

> the Summons and Complaint on the 5th day of May 2022, at the usual place
> of abode of Jamarcus Lewis by leaving a true copy of the Summons and

Complaint with Lisa Lewis at 527 Henry Avenue, Apt. D (Canton Village Apartments) Canton, MS, 39046, the usual place of abode of Jamarcus Lewis, with Jamarcus Lewis' Aunt, who is over the age of 16 and was willing to accept service, and thereafter on the 27th day of May 2022, I mailed (by first class mail, postage prepaid) copies to the person served at his or her usual place of abode where the copies were left.

Luckett's proof of service was signed and dated May 27, 2022, and was filed in the record on May 29, 2022.

¶39. Lewis then filed his motion to dismiss Deere's amended complaint under Rule 12(b)(5). The root of Lewis' challenge was that he did not live at 527 Henry Avenue, where Deere's process server left the papers with his relative and, therefore, could not be properly served at that address. Conversely, Deere argued Lewis was itinerant, but his relative informed the process server that Lewis was living at 527 Henry Avenue at the time service was attempted, so that address qualified as his "usual place of abode" as contemplated by Mississippi Rule of Civil Procedure 4(d).

¶40. In its order, the trial court determined that the process server properly executed the return of summons. The court held: "Residence service requires a subsequent mailing of the summons and complaint and although the photocopy of the envelope was not readable, Plaintiff's attorney represented to the [c]ourt that the summons and complaint had been mailed in accordance with the rule. The [c]ourt finds that to be sufficient to meet the mailing requirements." So the trial court found Deere was entitled to a presumption that service of process was effected.[4]

---

[4] Neither of the parties contests this finding by the trial court. But under Rule 4(d)(1)(B), "residence service by mere delivery of the summons and complaint does not complete the service." *Collom v. Senholtz*, 767 So. 2d 215, 216-17 (¶5) (Miss. Ct. App.

¶41. The trial court then determined that Lewis successfully rebutted this presumption based on its explicit consideration of affidavits of Lewis, Lisa Lewis, and Deputy Young. In reaching its ruling, the court specifically relied on the fact that in his affidavit, "Lewis swore . . . that he did not reside at that the Canton Village Apartments address and instead provided the addresses of his residence during that time and currently." And in her affidavit, "Lisa Lewis swore . . . that the process server left a copy of the summons and complaint at her residence even after she told him that Defendant did not live there." The court further noted that Deputy Young's affidavit "acknowledged that it was never confirmed that Defendant Jamarcus Lewis' resided there" at 527 Henry Avenue.

### A. Rebuttable Presumption for Service of Process

¶42. The plaintiff "bore the initial burden of showing effective service of the summons and complaint." *Thornton*, 242 So. 3d 188, 192 (¶10) (Miss. Ct. App. 2018). Where the "process server has properly executed a return, 'there is a presumption that service of process has occurred.'" *Priede v. Jones*, 282 So. 3d 1266, 1271 (¶12) (Miss. Ct. App. 2019) (quoting *Collins*, 184 So. 3d at 929 (¶18). "[T]his presumption that service has been effected is rebuttable through the use of extrinsic evidence, including the testimony of the party who is contesting service." *Collins*, 184 So. 3d at 929 (¶18). In turn, "[t]he plaintiff bears the burden of coming forward with evidence of proper service if it is challenged. This should include evidence of the steps taken to ensure that the party actually resides at the address on the date

2000) (quoting *Williams v. Kilgore*, 618 So. 2d 51, 55 (Miss. 1992)). Rather, "when such service is made, it must be followed by the mailing of a copy of the documents by first class mail to the defendant at the residence where process was delivered. Service is *only complete ten days after* the mailing." *Id.* (emphasis added) (quoting *Williams*, 618 So. 2d at 55).

the service is attempted (if serving in person)." 1 Jeffrey Jackson et al., Mississippi Civil Procedure, *Motions to Dismiss: Insufficiency of Process or Service*, § 5:24 (updated May 2024).

¶43.  Here, it is undisputed that Deere's process server served the summons and complaint on Lisa Lewis, who he believed was Lewis' aunt, at the 527 Henry Avenue address and executed a return. As such, Deere raised the presumption that service of process occurred.

¶44.  The only support Lewis provided the trial court for his motion to dismiss was his own sworn affidavit and an affidavit from his relative Lisa Lewis.  Lewis' self-serving affidavit stated:

> . . . .
> 2.  I currently reside at 623 3rd Street Canton, Mississippi, 39046.
> 3.  On May 5, 2022, I resided with my mother, Willie Mae Lewis, at 507 3rd Street Canton, Mississippi 39046.
> 4.  On May 5, 2022, I did not live at 527 Herny[5] Avenue, Apt. D in Canton, Mississippi with Lisa Lewis.
> 5.  Lisa Lewis is my cousin, and I did not live with her at her apartment before or after May 5, 2022.

Lisa's affidavit stated:

> . . . .
> 2.  I am Jamarcus M. Lewis's ("Jamarcus") cousin.
> 3.  On May 5, 2022, I lived at 527 Herny Avenue, Apt. D, in Canton, Mississippi 39046.
> 4.  Jamarcus has never lived with me, at the address noted above, or at any other address with me, before or after May 5, 2022.
> 5.  On May 5, 2022, a process server left a summons and Complaint against Jamarcus with me at my residence for him, though I told the process server that Jamarcus did not live with me.

---

[5]  Both Jamarcus Lewis' and Lisa Lewis' affidavits misspell the address as "Herny" instead of "Henry" Avenue.

15

¶45. In response to Lewis' challenge to the sufficiency of service of process, Deere submitted an affidavit from the law enforcement officer, Deputy Young, "documenting efforts of service of Jamarcus Lewis." His affidavit stated Deere's attorney had "trouble locating Jamarcus Lewis"; the attorney "discovered that Jamarcus Lewis had active warrants, and deduced that Lewis would think that any attempt to locate him would be attempts to arrest him on outstanding warrants." The deputy further explained his methodology would be to "run address and backgrounds on individuals through a locate plus website and skip tracing app."

¶46. He also stated that "Willie Lewis, Jamarcus Lewis' Mother, and Jamarcus Lewis appeared to move around a lot," and "the address, that I kept coming up with in common, that was most recent was 527 Henry Avenue, Canton Mississippi, the Canton Village Apartments." And at the 527 Henry Avenue address, the deputy found "an individual . . . who identified himself as Jamarcus Lewis' uncle[,]" but "he never told me and confirmed that Jamarcus Lewis lived there."

¶47. Also, in relevant part, his sworn statements included:

> The individual who identified himself as Jamarcus Lewis' uncle at Canton Village Apartments, took my number, and I got his, and I assured him when he asked me, that I was not trying to arrest Jamarcus Lewis, I was only trying to get him a copy of some papers, and that I was not trying to arrest him. I got the number of Jamarcus Lewis's uncle on or about April 24, 2022.

> Jamarcus Lewis' uncle responded every day to my phone calls that he would have Mr. Jamarcus Lewis call me back or meet me, either in Jackson, where I would spend time waiting on a phone call I would never receive, or meet me in Canton at the Canton Village Apartments, where I would wait and never receive a return phone call. This went on, and when I would call his uncle back he would not answer the phone, then hours later, I would receive a phone call

16

from Jamarcus' uncle apologizing, and that he would get him tomorrow. But the conversations with the uncle led to a dead end. In his affidavit, Deputy Young stated, "In hindsight, it appears that I was mislead by Mr. Jamarcus Lewis' uncle, and that he never intended to respond to any of the calls when he asked me to meet him either in Canton or Jackson, and that Jamarcus Lewis' uncle only intended to trick and deceive me."

¶48. The deputy's affidavit also had several pages of exhibits attached that showed the multitude of addresses associated with Lewis and his mother Willie Mae Lewis that Deputy Young's electronic research had identified. In particular, the second page of his exhibits contained a printed document with Willie Mae Lewis' name that stated from "12/2021-05/2022," Willie Mae was associated with "527 Henry Avenue, Canton, MS, 39406."

¶49. Then when Deere filed her post-hearing supplemental motion, she submitted an affidavit from the process server, Mr. Luckett. His sworn testimony stated, "An address of 3rd Street was never known or upon my research, ever appeared as an address for Jamarcus Lewis." Also:

> I went to 527 Henry Avenue, Apt. D Canton Mississippi, the Canton Village Apartments. A Lisa Lewis came outside, it was in the daytime, I remember her having a bonnet on her head, when I asked her how she was related to Jamarcus Lewis, she informed me she was his aunt and that he lived there, and she accepted the papers in the envelope which was the summons and complaint. Mrs. Lewis did not refuse to take the papers and I left, and notified the Attorney.

¶50. This Court came across a similar issue not long ago in *Priede*, 282 So. 3d at 1266 (¶1). The plaintiff was in a motor vehicle accident with the defendant and filed a complaint against her for personal injuries. *Id*. at 1268 (¶2). The plaintiff hired a law enforcement officer as a

process server who attempted to serve the complaint at an address in Southaven. *Id*. at 1268 (¶3). A man who identified himself as the defendant's husband answered the door and told the detective that the defendant lived at that address but was not home. *Id*. The man said he could accept the papers on defendant's behalf, so the detective gave them to the man, filed a proof of service, and then mailed a copy of the papers.[6] *Id*.

¶51. Less than a month later, the defendant filed a motion to dismiss for insufficient service of process, claiming she did not reside at the address where the papers were served and the man who was served the papers was her ex-husband who did not have authority to accept the papers. *Id*. at 1269 (¶5). The plaintiff filed a response opposing the motion, arguing service had been perfected because the man represented himself as defendant's husband, and the Southaven address was defendant's address or "usual place of abode" at the time of service. *Id*. at 1269 (¶6). The plaintiff attached an affidavit from the detective, as well as copies of seven official documents that tied the defendant's name and/or the man's name directly to the Southaven address, such as a crash report and property records. *Id*.

¶52. The defendant then filed a reply and submitted her own affidavit stating that before the plaintiff's complaint was filed, her marriage to the man was terminated by divorce decree, and she moved out of the marital home at the Southaven address and began residing at a new address in Olive Branch. *Id*. at 1270 (¶7). She attached a copy of the divorce decree, a signed lease for a house at the Olive Branch address, and a utility bill in her name for service at the Olive Branch address. *Id*.

---

[6] The proof of summons stated that the detective left a copy of the summons and complaint with the man at defendant's "usual place of abode."

¶53. The circuit court granted defendant's motion to dismiss, finding that the plaintiff failed to produce evidence to contradict the defendant's affidavit and supporting documentation. *Id*. at 1270 (¶8). On appeal, we found that the defendant rebutted the service of process presumption by submitting her affidavit and we agreed with the trial court that the plaintiff failed to produce evidence to contradict the evidence the defendant provided. *Id*. at 1271 (¶14).

¶54. Unlike the situation in *Priede*, where the defendant presented her affidavit in rebuttal and then the plaintiff failed to produce evidence contradicting her affidavit, Deere *did* produce evidence to contradict Lewis' and Lisa's affidavits. Deere presented sworn testimony from the process server stating Lisa told him that she was Lewis' aunt and Lewis lived at 527 Henry Avenue at that time. This testimony directly contradicted Lewis' and Lisa's statements. The process server's sworn testimony also contradicted Lewis' affidavit by informing the court that a third street address never appeared as Lewis' address throughout his research.

¶55. Moreover, in contrast to *Priede*, Lewis did not provide any documentation refuting that as of May 5, 2022, he lived at 527 Henry Avenue or showing that he lived at 507 3rd Street. Not only is there no evidence in the record connecting Lewis to 507 3rd Street at the time of service, there is no evidence in this record proving the address even exists.

¶56. Lewis attempted to rebut the presumption that service of process was completed with his and Lisa's affidavits. Deere, in-turn, presented evidence from her process servers that *contradicted* the two affidavits Lewis presented.

¶57. The trial court in this case disregarded not only the sworn testimony of the process server but also the extensive documentation and testimony provided by Deputy Young. This sworn evidence Deere provided contradicted and refuted the self-serving affidavits Lewis provided.

¶58. Consequently, we find that the court abused its discretion in making its determination that Lewis successfully rebutted the presumption of effective service of process.

### B. "Good Cause" for Extension to Serve

¶59. Even if the trial court's ruling on the rebuttable presumption was not an abuse of discretion, we find there was good cause for an extension of time to obtain service on the defendant.

¶60. "As noted in Rule 4(h), the court *shall not* dismiss a matter if the plaintiff can establish 'good cause' for failing to serve process on a defendant within 120 days of filing her complaint." *Priede*, 282 So. 3d at 1271-72 (¶15) (emphasis added).

¶61. "A determination of good cause is a discretionary ruling by the trial court and is entitled to deferential review of whether the trial court abused its discretion and whether there was substantial evidence supporting the determination." *Lindsey v. Butts*, 382 So. 3d 1140, 1146 (¶18) (Miss. 2024) (quoting *Webster v. Webster*, 834 So. 2d 26, 28 (¶4) (Miss. 2002)). The "determination of 'good cause' is a fact-sensitive analysis." *Priede*, 282 So. 3d at 1272 (¶15).

¶62. "Plaintiffs bear the burden of establishing good cause." *Holland*, 287 So. 3d at 292 (¶8). In order "[t]o meet the burden of proof of good cause, the plaintiff must demonstrate

that a diligent effort was made to effect timely service." *Lindsey*, 382 So. 3d at 1146 (¶18) (quoting *Copiah Cnty. Sch. Dist. v. Buckner*, 61 So. 3d 162, 166 (¶14) (Miss. 2011)). "[T]he plaintiff must demonstrate 'at least as much as would be required to show excusable neglect, as to which simple inadvertence or mistake of counsel or ignorance of the rules usually does not suffice.'" *Id*. at 1145 (¶14) (quoting *Webster*, 834 So. 2d at 28 (¶4)). One key point our Supreme Court previously noted is that "good cause is likely (but not always) to be found when the plaintiff's failure to complete service in timely fashion is a result of the conduct of a third person." *Holmes v. Coast Transit Auth.*, 815 So. 2d 1183, 1186 (¶12) (Miss. 2002); *see also Collins*, 184 So. 3d at 930-31 (¶23).

¶63. As established above, a review of the record unveils extensive evidence showing the failure to serve Lewis within the designated time period was the result of misleading and deceptive conduct by Lewis and his family members. The sworn testimony of the law enforcement officer overwhelmingly shows that Lewis' uncle interfered with his efforts to locate and serve Lewis and engaged in conduct intending to mislead Deputy Young. Indeed, the uncle actually obstructed Deputy Young's efforts by exchanging phone numbers and agreeing to help him get in contact with Lewis but then not returning Deputy Young's phone calls and failing to show up when they agreed to meet. Furthermore, it is clear that Lewis' uncle was aware of Lewis' outstanding arrest warrants and gauged his responses to Deputy Young based on whether the attempts to locate Lewis were to serve the arrest warrants.

¶64. Both Deputy Young's and Luckett's affidavits also indicate that Lisa made statements and acted in ways that were deliberately deceptive to the process server. She initially told the

21

process server that she was Lewis' aunt, but she subsequently filed an affidavit claiming she was actually his cousin. She also initially told Luckett that Lewis did live at 527 Henry Avenue when he was attempting to serve the complaint and summons, but then later she changed her tune in her affidavit and claimed Lewis never lived with her at that address. Whether aunt or cousin, her actions caused a false return to be made on process issued by the court in violation of our precedent. *See Collins*, 184 So. 3d at 930-31 (¶¶22-23).

¶65.    Additionally, Lewis' own statements and actions further support that Deere demonstrated "good cause" for not timely obtaining service of process. The evidence in the record, when viewed as a whole, indicates Lewis took advantage of the conduct of his uncle and Lisa in order to evade service. Lewis' uncle had notice of attempted service as early as April 24, 2022, but Lewis remained consistently out of reach and unable to be located. Lewis had several warrants out for his arrest, he had no residence or lease in his name, he did not have a phone number tied to his name, and he moved frequently. He effectively thwarted any avenue of contacting him or locating his person.[7]

¶66.    We also point out that if Lewis' affidavit is believed, he was living with his mother Willie Mae Lewis on May 5, 2022. Deere presented evidence through Deputy Young that when he was trying to locate Lewis, he also researched Willie Mae Lewis' whereabouts. The results indicated that Willie lived at 527 Henry Avenue during "12/2021-05/2022." Lewis did not provide any evidence to contradict this finding other than his own bare assertion in

---

[7] *Cf. Fortenberry v. Mem'l Hosp. at Gulfport Inc.*, 676 So. 2d 252, 256 (Miss. 1996) (defendant moved, was difficult to find, and only a few people knew his whereabouts; extension of time was warranted because defendant was difficult to locate and serve).

his affidavit that he lived with Willie Mae Lewis at 507 3rd Street in Canton. As an additional note, he did not provide any evidence that would show this residence was discoverable or was known information that Deere failed to pursue. In fact, there's no corroborating evidence in the record that this was his residence, nor is there any evidence to support that this address even exists.

¶67.　As was well-stated by our Supreme Court,

> The professional process server hired by the plaintiff's attorney, and, ultimately, at the expense of the plaintiff, was misled by what can be viewed only as the deliberate deception of a third party who turned out to be a close relative of the defendant. This third party's corrupt conduct caused a false return to be made on process issued by and returned to a Mississippi trial court. No litigant should be rewarded for such treachery.

*Collins*, 184 So. 3d 922, 931 (¶24).

¶68.　In light of the totality of the evidence, we find that Deere sufficiently demonstrated that her attempts to properly serve Lewis were impeded by the actions of both the man claiming to be Lewis' uncle and the woman identified as Lisa Lewis. We find Deere made a sufficient showing of good cause for her failure to accomplish service of process on Lewis within the extended time, and the trial court abused its discretion by finding otherwise. We further find that Deere demonstrated conduct from Lewis and his relatives constitutes "understandable mitigating circumstances," so the trial court's decision denying Deere an extension was not supported by substantial evidence.

## CONCLUSION

¶69.　For nearly twenty years, our Supreme Court has emphasized that claim-splitting is meant to safeguard judicial resources and to halt potential hardships on defendants. Just last

year, a unanimous Supreme Court reversed where a trial court had granted a dismissal but neither of these policy issues were burdened. The same is true of today's case. Deere's second complaint was not an impermissible duplicative action, so the claim-splitting doctrine is inapplicable in this case.

¶70. Furthermore, the trial court's determination that service of process was untimely and without good cause shown was not supported by substantial evidence. The court abused its discretion when it failed to acknowledge the evasive maneuvers of Lewis and the deceptive conduct of his family members.

¶71. Therefore, we reverse the trial court's dismissal of Deere's second-filed action, and we remand this case to the trial court with instructions to reinstate Deere's amended complaint, to allow Deere an extension to effectuate service of process, and to proceed in accordance with this opinion.

¶72. **REVERSED AND REMANDED.**

**WESTBROOKS, McDONALD, LAWRENCE AND SMITH, JJ., CONCUR. CARLTON, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY BARNES, C.J., AND WILSON, P.J. EMFINGER, J., NOT PARTICIPATING.**

**CARLTON, P.J., DISSENTING:**

¶73. The majority reverses the circuit court's decision dismissing Deere's second lawsuit with prejudice and remands the case based upon the claim-splitting doctrine and the circuit court's separate, additional ground for dismissal based upon service-of-process deficiencies. I respectfully disagree on the first point and, thus, do not need to reach the second point. I would affirm the circuit court's dismissal of Deere's second lawsuit based upon the

24

claim-splitting doctrine and the circuit court's determination that dismissal with prejudice was proper because the three-year limitations period applicable to Deere's negligence-based claims had elapsed.

¶74.  Mississippi follows a majority of the states in prohibiting plaintiffs from bringing duplicative actions. *Warrington v. Watkins & Eager PLLC*, 371 So. 3d 1277, 1280 (¶11) (Miss. 2023); *Carpenter v. Kenneth Thompson Builder*, 186 So. 3d 820, 824 (¶10) (Miss. 2014).  The policy rationale for this prohibition is grounded in judicial economy. *Triplett v. S. Hens Inc.*, 238 So. 3d 1128, 1130 (¶12) (Miss. 2018).  In particular, claim-splitting "is based on the idea that where a person has a single cause of action, in the interests of convenience and economy to the public and to the defendant he should be entitled to but one right of action." *Warrington*, 371 So. 3d at 1284 (¶28).  "By spreading claims around in multiple lawsuits in other courts or before other judges, parties waste scarce judicial resources and undermine the efficient and comprehensive disposition of cases." *Carpenter*, 186 So. 3d at 824 (¶11).

¶75.  "Claim-splitting . . . occurs when a plaintiff attempts to bring a duplicative action involving claims arising from a single body of operative facts against the same defendants." *Id.* at 824 (¶10). "Plaintiffs have no right to maintain two actions on the same subject in the same court, against the same defendant at the same time." *Id.* at (¶11).

¶76.  Upon review, I find that Deere was "maintain[ing]" two actions at the same time ("*Deere I*" and "*Deere II*") arising from a single body of operative facts (negligence-based claims based upon the car accident) against the same defendants (Lewis and Taylor). *See*

25

*Carpenter*, 186 So. 3d at 824 (¶10). Further, if I were to assume that *Deere I* was final, "it certainly would have precluded" *Deere II*, which was an action against the same defendants based upon the same claims arising from the same car accident. *See Triplett*, 238 So. 3d at 1131 (¶13). Accordingly, I would find that Deere meets the test for impermissible claim-splitting.

¶77. The majority finds that Deere did not pursue *Deere I* after she filed it and failed to serve the defendants, so it was not "pending" or being "maintained" when *Deere II* was filed. Thus, according to the majority, filing *Deere II* did not violate the claim-splitting doctrine. The supreme court rejected a similar argument in *Triplett*, and I find that its analysis is applicable here.

¶78. In *Triplett*, Stacey Triplett filed three lawsuits against her employer, Southern Hens, "all stemming from an incident in which Triplett, while working, witnessed the gruesome death of a coworker." *Triplett*, 238 So. 3d at 1128-29 (¶1). The first lawsuit was not at issue; it was removed to federal court and ultimately dismissed. *Id.* at 1129 (¶1). Triplett then filed a second lawsuit against Southern Hens for its alleged failure to timely report the worker's compensation incident ("failure to report"), but Triplett never served Southern Hens within the 120-day period, as required by Mississippi Rule of Civil Procedure 4(h). *Id.* Rather than seeking an extension of time to serve the defendant, Triplett filed a third lawsuit against Southern Hens for its failure to report. *Id.* at (¶2). The circuit court dismissed the third lawsuit as an impermissible duplicative action. *Id.* Finding no error, the supreme court affirmed. *Id.*

26

¶79. On appeal, Triplett argued that she was not "maintaining" two lawsuits because she never served process under Rule 4(h) in the second lawsuit, so, according to Triplett, it was "nullified" at the time she filed the third lawsuit after the 120-day time period elapsed under Rule 4(h). *Id.* at 1131 (¶14). The supreme court rejected this argument, recognizing that "even after the 120-day period for service of process lapses, the trial court must formally dismiss the complaint before it becomes a nullity." *Id.* at (¶15). The second lawsuit in *Triplett* was not dismissed until five months after the third lawsuit was filed; thus, the supreme court found Triplett's argument "unpersuasive":

> Here, despite the fact that Triplett admittedly had no basis to seek an extension of time to effectuate service of process, the circuit court did not dismiss [the second suit] until May 23, 2016—five months after she had filed the duplicative suit, [the third suit]. And so Triplett's second suit, despite her argument, technically was being maintained at the time she filed her third suit. Because of this, we find Triplett's argument—that she was not maintaining two actions at the same time—unpersuasive.

*Id.* at 1131-32 (¶16). As to when the violation occurred, the supreme court specifically found—and emphasized— that "Triplett violated the prohibition of duplicative actions *at the moment she filed* her third suit, on December 22, 2015." *Id.* at 1132 (¶17).

¶80. Here, Deere filed *Deere I* on April 28, 2021, and had summonses issued on the same day. She had 120 days to serve the defendants. M.R.C.P. 4(h). When that time period elapsed on August 26, 2021, Deere had not served the defendants. She did not seek an extension of time to perfect service during the 120-day period, nor did Deere seek additional time for "good cause" after the 120 days elapsed. Rather, she filed *Deere II* on October 5, 2021, and simply let *Deere I* remain dormant until it was dismissed without prejudice for

27

want of prosecution nearly a year later on September 9, 2022. Just as the supreme court found in *Triplett* under analogous circumstances, I likewise find that for purposes of applying a claim-splitting analysis, *Deere I* "technically was being maintained at the time" Deere filed *Deere II*. *Triplett*, 238 So. 3d at 1132 (¶16). Accordingly, I would reject the notion that Deere did not maintain two lawsuits at the same time in this case.

¶81. The majority relies on *Warrington* in asserting that the claim-splitting doctrine should not apply here, and further finds that Deere did not violate the public policy reasoning for applying the claim-splitting doctrine in this case. I disagree on both points. The circumstances in *Warrington* are wholly distinguishable from those in this case, and I find that Deere's actions undeniably violated the policy rationale prohibiting claim-splitting—that is, to promote judicial economy rather than waste judicial resources. *Triplett*, 238 So. 3d at 1130 (¶12).

¶82. In particular, I find that the circumstances in this case do not constitute, and are not comparable to, the "special circumstances" in *Warrington* that compelled the supreme court to reverse the circuit court's dismissal based on the claim-splitting doctrine in that case. The supreme court distinguished *Triplett*, among other cases, because "Warrington did not 'maintain two actions on the same subject in the same court, against the same defendant at the same time.'" *Warrington*, 371 So. 3d at 1283 (¶24) (quoting, among other authorities, *Triplett*, 238 So. 3d at 1131 (¶12)). "Instead, Warrington voluntarily dismissed the first action against [the defendant in that lawsuit (Complaint I)] and filed a second action against all [d]efendants (Complaint II)]. The three additional [d]efendants in the second action were

28

never parties to the first action." *Id.* Apparently due to a clerical error, however, Complaint I was not actually dismissed until twelve days after Complaint II was filed. *Id.* at 1283 (¶25).

¶83. The supreme court found that these particular circumstances "can hardly be characterized as '*maintain*[*ing*] two actions,' as contemplated under the claim-splitting doctrine." *Id.* (quoting *Carpenter*, 186 So. 3d at 824 (¶11)) (emphasis added by the *Warrington* court). Specifically, the supreme court noted, "'[U]nlike in *Triplett*, Warrington used legitimate means to preserve h[is] claim—such as voluntarily dismissing [Complaint I].'" *Id.* at 1284 (¶29) (quoting *Triplett*, 238 So. 3d at 1133 (¶23)). Further, Warrington did so "without any prompting by Defendants or the trial court," *id.* at 1283 (¶26); Complaint I had been pending for less than four months before Warrington dismissed it; Complaint I and Complaint II overlapped by just twelve days; and Complaint II added three new defendants. *Id.* at 1284 (¶28). Under these circumstances, the supreme court found that Warrington did not "waste scarce judicial resources and undermine the efficient and comprehensive disposition of cases," *id.*, but, instead, "united in one proceeding all matters regarding his cause of action against the Defendants" when he filed his second complaint. *Id.*

¶84. In contrast to *Warrington*, Deere in this case took *no* affirmative action to dismiss *Deere I*, and it remained pending for over a year from the time *Deere II* was filed. I recognize that Deere did not file her amended complaint in *Deere II* (adding the estate of Herman Taylor) until March 17, 2022, which was less than six months before *Deere I* was dismissed. But under either scenario, *Deere I* remained pending far longer than the twelve-day overlap in *Warrington*, which only occurred due to a clerical error. Further, as the

29

majority also observes, *Deere I* and *Deere II* were against essentially the same defendants. In contrast, the supreme court found it was significant in *Warrington* that Warrington's second complaint added three new defendants, thus uniting his claims against all the defendants in one lawsuit. *Id.*

¶85. Further, unlike the majority, I find numerous examples in this case demonstrating that Deere's actions wasted judicial resources and interfered with "the efficient and comprehensive disposition of cases." *Id.* Despite the fact that *Deere I* was pending before Judge Arthur, Deere filed her "Motion for Leave to Amend, to Substitute Parties, and for Extension of Time to Serve Process" in *Deere II* without telling Judge Ratcliff (or the defendants) about *Deere I*. Judge Ratcliff, after "having reviewed the pleadings and [after] consider[ing] the applicable procedural rules," granted Deere's motion. Deere filed the amended complaint in *Deere II*, and summonses were issued.

¶86. Judge Ratcliff did not learn of *Deere I* until the defendants discovered by happenstance that *Deere I* was also pending against them. The defendants—not Deere—notified the trial court. At that point, the defendants were forced to supplement their motion to dismiss *Deere II* based upon this new information, and ultimately Judge Ratcliff sought supplemental briefing on the claim-splitting issue due to the duplicative lawsuits Deere filed.

¶87. With respect to *Deere I*, the circuit clerk was required to examine the docket and issue a "Motion of the Clerk to Dismiss for Want of Prosecution" relating to that lawsuit. The circuit court (by Judge Arthur) was required to assess the issue and enter an order dismissing

30

*Deere I* on that basis.

¶88.   All these circumstances plainly wasted judicial resources and undermined the "efficient disposition of cases." *Id.* In short, the "special circumstances" in *Warrington* are not present here, nor are any comparable circumstances. I reject the majority's view that Deere did not "maintain" two actions at the same time or waste judicial resources in the process.

¶89.   I also find that the circuit court properly dismissed Deere's lawsuit with prejudice. The car accident in this case occurred on October 5, 2018. Deere sued the defendants for negligence, negligent entrustment, and negligent infliction of emotional distress relating to the accident. These negligence-based claims are subject to Mississippi's catch-all three-year statute of limitations. *See* Miss. Code Ann. § 15-1-49 (Rev. 2019).

¶90.   Deere asserted on appeal that the circuit court erred in dismissing her lawsuit with prejudice based upon its determination that the three-year statute of limitations applicable to her negligence-based claims had elapsed. But Deere supports her argument on the incorrect premise that *Deere II* was not an impermissible duplicate action. She asserts that she filed *Deere II* on October 5, 2021 (just within the statutory limitations period), and, according to Deere, she properly served the defendants by the May 5, 2022 extended-service deadline allowed by the circuit court when it granted her "Motion for Leave to File Amended Complaint, Motion to Substitute Parties, and to Extend Time to Serve Process." Thus, according to Deere, her complaint was timely filed.

¶91.   I disagree. Deere's assertions are unsupported by Mississippi law. For the reasons

31

addressed below, I find no error in the circuit court's dismissal of Deere's lawsuit, with prejudice, because she is outside the three-year statute of limitations applicable to her negligence-based claims.

¶92. "[W]hen a suit is commenced within the period of limitation, the statute of limitations stops running, *for a time*." *Est. of Puckett v. Clement*, 238 So. 3d 1139, 1146 (¶22) (Miss. 2018) (internal quotation marks omitted). "In the event process is not served during the 120[-]day service period, the statute begins to run again." *Id.* at 1146-47 (¶22). Rule 4(h) provides:

> If a service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint and the party on whose behalf such service was required cannot show good cause why such service was not made within that period, the action shall be dismissed as to that defendant without prejudice upon the court's own initiative with notice to such party or upon motion.

M.R.C.P. 4(h). "In order to toll the statute of limitations beyond 120 days, the plaintiff must seek an enlargement of the Rule 4(h) deadline under Mississippi Rule of Civil Procedure 6 or dismiss the suit and refile it." *Id.* at 1147 (¶22); *Arrington v. Anderson*, 356 So. 3d 604, 611 (¶27) (Miss. Ct. App. 2022).

¶93. With these rules in mind, I set forth the dates relevant to this analysis below:

Date | Action
---|---
10/05/2018 | The accident occurs.
04/28/2021 | *Deere I* is filed, and summonses are issued.

**The statute of limitations is tolled with 159 days remaining.**
*See* M.R.C.P. 4(h); *Clement*, 238 So. 3d at 1146 (¶22).

32

The 120-day period to serve process begins. *Id.*

08/26/2021    The statute of limitations **resumes** after service of process was not perfected in *Deere I*, and Deere does not move for additional time within which to effectuate service. *See Clement*, 238 So. 3d at 1146-47 (¶22).

10/05/2021    *Deere II* is filed while *Deere I* remains pending.

02/01/2022    **The statute of limitations expires.**

09/09/2022    *Deere I* is dismissed for want of prosecution.

¶94. As the above shows, the car accident occurred on October 5, 2018. Deere filed *Deere I* on April 28, 2021, asserting negligence-based claims against the defendants that are subject to the three-year, catch-all statute of limitations. *See* Miss. Code Ann. § 15-1-49. When Deere filed *Deere I*, 159 days remained before the limitations period would expire. The limitations period tolled for 120 days, M.R.C.P. 4(h), to allow Deere to perfect service of process on the defendants. *See Clement*, 238 So. 3d at 1146 (¶22). The 120-day period ended on August 26, 2021. Deere had not served the defendants with process. Deere did not seek an enlargement of the Rule 4(h) deadline under Rule 6 during the 120-day period, *see Clement*, 238 So. 3d at 1146-47 (¶22); M.R.C.P. 6, nor did Deere seek additional time for "good cause" after the 120 days elapsed. *See* M.R.C.P. 4(h). Because none of these events occurred, the limitations period began to run again. It expired 159 days later, on February 1, 2022.

¶95. Rather than pursue the procedural options available to her in *Deere I* or take affirmative action by dismissing *Deere I* and then re-filing it, *see Clement*, 238 So. 3d at 1147 (¶22), Deere simply filed *Deere II* on October 5, 2021, asserting the same negligence-

based claims arising from the car accident against the same defendants. Although *Deere II* was filed just within three years of the car accident, "[Deere] violated the prohibition of duplicative actions *at the moment she filed* [*Deere II*;] . . . thus, [*Deere II*] became null." *Triplett*, 238 So. 3d at 1132 (¶17). *Deere I* was not dismissed for want of prosecution until September 9, 2022. Applying *Triplett* here, *Deere II* was a nullity from the time it was filed on October 5, 2021.

¶96. "That [Deere] may find herself outside of the statute of limitations due to [*Deere II*] being declared null is of no consequence." *Id.* at 1133 (¶23). Deere "had legitimate methods to preserve h[er] claim—for example, [s]he could have promptly and voluntarily dismissed [*Deere I*] . . . and then refiled it with proper service," but she did not do so. *Id.* Instead, Deere impermissibly chose to engage in claim-splitting by "fil[ing] a duplicative claim in the same court, regarding the same matter, against the same defendant[s]." *Id.*

¶97. In short, the filing of *Deere II* while *Deere I* was pending did nothing to extend the limitations period in this case. Accordingly, I would affirm the circuit court's dismissal of *Deere II* as an impermissible duplicative action, and I would further affirm the circuit court's dismissal of Deere's lawsuit with prejudice because the statute of limitations on her negligence-based claims had elapsed.

**BARNES, C.J., AND WILSON, P.J., JOIN THIS OPINION.**

34